Gheen, Judge.
By the act of 1829, ch. 95, a court is directed to be holden at Nashville, to consist of a judge of the supreme court, a chancellor, and a judge of the circuit court, with power and authority, upon complaint being made by the bank, to hear and determine all cases against the officers of the bank and their sureties, and against persons who may have overchecked, and thereby become defaulters to said bank. The court is empowered, by the act, to call the defendants before it, and examine them on interrogatories, to hear evidence, and to determine the causes according to the principles of a *600 court of equity. The court is declared to be supreme within its sphere of action, and that no appeal lies from its decisions. In the case now under consideration, the bill states, that on the 2d of October 1820, Charles Cooper was appointed clerk of the bank, and that, at the same time he entered into bond with securities, for the faithful and correct discharge of his duty; that he continued clerk until January 1822, when he was re-appointed; during which time he did not well, truly and faithfully demean himself in the discharge of the duties of his appointment; but, on the contrary, omitted and neglected well and truly to discharge the duties of clerk of said bank; in this, that while clerk of the said bank, he received its funds to a large amount, and applied them to his own use and benefit; that from his own statement, he had received and applied to his own use the sum of $2,556 33, from which he claimed to be deducted, for salary, &c., the sum of $1,600 50, leaving the sum of $955 86 with which he is chargeable, for which a decree is prayed.
The defendants plead, that Jacob Peck, Nathan Green, and William E. Kennedy, have no power or authority to hear, try, and determine said complaint, nor have they jurisdiction thereof, by the constitution of the United States and the constitution of Tennessee, and the law of the land, with an averment that jurisdiction is in the county or circuit courts of Davidson.
In support of this plea, several constitutional grounds have been taken.
1. It is contended, that this is a special court,having no relation to the other courts in this state; and is not therefore, “superior or inferior,” within the meaning of the first section of the fifth article of the constitution.
2. That judges can only be created by an election by joint ballot of both houses of the general assembly; and not being thus appointed, therefore the persons named in the act of assembly as judges of this court, are not constitutionally such.
3. That the- law is retrospective.
4. That it violates the right of trial by jury.
*601 5. That it is partial in its operation; and for that reason, is not a “law of the land.”
1. Upon the first proposition, it will only be necessary to recur to the language of the constitution, (Art. v. sec. 1,) in which the judicial power of the state is vested in such superior and inferior courts of law and equity as the legislature shall, from time to time, direct and establish. Had the framers of the constitution intended to restrict the legislation upon this subject to the courts then in operation, and only meant to authorize an increase of them, or the number of places of holding them, they would have used very different language. To create a new district, and appoint additional judges to hold the court there, or to direct the sittings of the court of pleas and quarter sessions in a new county, would not be the establishment of courts, in the sense here indicated. There is but one supreme court in the state, although it holds sessions at several places. So the creation of new districts would only have been providing for the sitting of the district court at additional places. Nor can it be seen, that it was intended to restrict legislation to the creation of such courts as should be appealed from, and therefore, “inferior;” and an appellate court, which would be therefore, “superior.” The right oí appeal is only conferred by statute. No constitutional provision requires that it should exist. This cannot therefore, be the sense of these-words. It would be perfectly competent for the legislature to abolish the supreme court, and take away the right of appeal from the county to the circuit court. Each-would then exercise its own peculiar jurisdiction, and'be supreme within its sphere of fiction. I conclude, as a necessary consequence from what has been said, that the legislature has power to create as many different courts as the wants of the country may require, and each to be as distinct and independent of the other, as the court now under consideration is distinct.and independent of all others in this state.
2. The next .consideration is, as to the appointment of the judges. It is most clear, that judges cannot rightfully *602 exercise authority, unless they receive their appointment in one of the modes pointed out by the constitution. The three persons called to discharge the functions of a court, jjaye each been elected by joint ballot of both houses of the general assembly to the judicial offices they ordinarily fill; and by the act oí assembly under consideration, they are assigned to the performance of this new duty. If it were another office, we clearly could not hold it; nor would the legislative enactment, directing us to the performance of this duty, be a constitutional appointment. But the act does not so consider it. It is the prescribing of a new and additional duty, appurtenant to the offices for which we were elected. Suppose the legislature were to abolish the court of errors and appeals, and in lieu thereof, create a court of conference, to be holden by all the circuit judges: Would it not be competent for them to do so? And might not those judges constitutionally hold such court without a new election? It seems to me, that the holding such court would be a duty appurtenant to their offices- as circuit judges, and that it could not be regarded as a distinct office. If it were so regarded, the constitutions of several of the states where this system prevails, would be daily violated by the highest judicial functionaries. Upon the other part of this objection, whether the three individuals can properly be assigned to this duty, the other judges of the supreme court, chancellors and judges of the circuit court not being called to it, and the duty, instead of being added to the offices we hold, being added to this individually, there is considerable doubt. Upon this subject, the reasoning of judge Kennedy is entitled to great weight.
I now come to the three remaining objections; that the law is retrospective; that it takes away the right of trial by jury; and that, as it regards the defendants, it is partial in its operation.
Judge Haywood
has said (Tipton vs. Harris, Peck’s Reports, 418,) that “the sovereign legislative power of Tennessee, like the sovereign power of all other states, of whatever character they may be, may do all things, not *603 naturally impossible, which it deems promotive of the public welfare, except in such instances where by the fundamental law of the nation, written by the mighty hand of the people, it is forbidden. And in any instance where legislative power is questioned, it bounds over opposition, unless a restriction upon that power in the particular instance can be clearly pointed out.” To this proposition, in its full extent, I cannot give my assent. By the constitution, all the legislative power of the people is vested in the general assembly; and it follows, that the legislature may do any thing within the legitimate scope of legislation, which is not forbidden in the constitution, either in express terms or by implication. But certain limits to the exercise of legislative power have been recognized from the earliest times. It is a principle of the English common law, as old as the law itself, that a statute even of the omnipotent parliament of Great Britain, is not to have a retrospective effect. Why was it so considered by the English courts? They had no written constitution, with express restrictions upon the legislative power. -It was so considered, because there are eternal principles of justice which no government has a right to disregard. It does not follow, therefore, because there may be no restriction in the constitution prohibiting a particular act of the legislature, that such act is therefore constitutional. Some acts, although not expressly forbidden, may be against the plain and obvious dictates of reason. The common law, says lord Coke, (8 Co. 118 a.) adjudgeth a statute so far void.
In the case before the court, the suit is upon a bond with condition faithfully to perform the duties of .clerk. Of this case, it is clear, a court of equity would have no jurisdiction ; but, according to the general laws of the land, it would be triable in the common law courts by a jury. The sixth article in the bill of rights declares, that “the trial by jury shall remain inviolate.” By the act constituting this court, the causes are to be tried according to the principles of a court of equity. In courts of equity there is no jury, except at the discretion of the chancellor; and-after the jury find the facts upon an issue sent to them, *604 it is discretionary with the chancellor whether his decree be governed by that finding or not. If this cause be tried Up0n the principles governing a court of equity, it seems me the defendant’s right to trial by jury is violated. It is contended, that the legislature may define and enlarge the jurisdiction of courts of equity; and, by giving them jurisdiction of causes of action heretofore of exclusive common law jurisdiction, the right of trial by jury, although taken away in fact, is not violated in the sense of the constitution, that instrument contemplating the existence of courts of equity without juries. If this were true, the provision would seem to be a very useless one indeed. The framers of the constitution must have seen that it would be in the power of the legislature to frustrate the provision altogether in civil cases, by transferring them all to courts of equity, and thereby dispensing with a jury; or if, as the argument is, courts of equity were to have concurrent jurisdiction of all cases, it might result in the exclusive jurisdiction of that court at the option of the plaintiffs. But there is no ground upon principle, to prevent the giving of exclusive jurisdiction of all cases to the courts of equity, if it be once conceded that they can acquire concurrent jurisdiction with the common law courts, of causes properly and exclusively triable in the latter courts. Under this view of the case we are considering, it becomes one of deep solicitude and vast importance. The trial by jury has been considered, in England and America, as the most distinguishing badge of liberty. Great solicitude was manifestly felt upon the subject by the framers of our constitution. In the ninth article of the Bill of Rights, it is secured in criminal cases, and in the article before referred to, it is secured in civil cases. And so great was the solicitude which was felt on the subject, that in the fifth article and fifth section of the constitution, a provision is introduced (in order that the judges may be prevented from the exercise of any influence on the minds of the jury) expressly requiring that the charge of the court-should only state the evidence and declare the law. Can it be believed that all this solicitude and caution were *605 manifested in relation to a provision, which would according to the argument, be wholly defeated by transferring the jurisdiction to the chancery courts? 1 cannot so consider it. But, however this may be in relation to a law operating equally upon all, a question of still more serious import presents itself, when we consider the partial operation of this act of assembly. In the language of Chief Justice Marshall, (Fletcher vs. Peck, 6 Cranch 135) “it is the peculiar province of the legislature to prescribe general rules for the government of society; the application of these rules to individuals in society, would seem to be the duty of other departments.” Judge Catron says, (Vanzant vs. Waddel,) (a) “the right to life, liberty, and property of-every individual, must stand or fall by the same rule or law that governs every other member of the body politic or Hand” under similar circumstances; and every partial or private law, which directly proposes to destroy or affect individual rights, or does the same thing by affording remedies leading fo similar consequences, is unconstitutional and void.”
In Holden vs. James, (11 Mass. 396) the court decide, that it is not competent to suspend the operation of the statute of limitations in a particular case, and that such law is unconstitutional. Such an act would be void because of its partial operation. It is provided’in our bill of rights, (article viii,) “that no freeman shall be taken or imprisoned, or disseized of his freehold, liberties, or privileges, or outlawed, or exiled, or in any manner destroyed, or deprived of his life, liberty, or property, but by the judgment of his peers, or the law of the land.”
By Haw of the land” is meant a general and public law, operating equally on every individual in theucommunity. Such is the opinion of Judge Catron, in the case before referred to, and such was the opinion of Lord Coke upon' the construction of magna charta. In his commentary on this instrument, (2 Institute, 51) he says, that the térms *606 «law of the land” were used that the law might extend to jje informs us, that parliament, by an act in the 11th year of Henry VII. violated the principles of the great charter in this particular; and that, under the authority of this act, Empson and Dudley committed horrible oppressions and exactions, to the undoing of many people. But that in the first year of Henry VIII, this act was repealed on the avowed ground that it was a violation of the charter. “And the ill success hereof, (he adds) and the fearful end of these two oppressors, should deter others from committing the like, and should admonish parliaments, that instead of the ordinary and precious trial per legem term, they bring not in absolute and partial trials by discretion.”
If the construction here contended for, be not the true one, it seems to me, that an edict in the form of a legislative enactment, taking the property of A, and giving it to B, might be.regarded as the Haw of the land,” and not forbidden by the constitution; but such a proposition is too absurd to find a single advocate. This provision was, introduced to secure the citizens against the abuse of power by the government. Of what benefit is it, if it impose no restraint upon legislation? Was there notas just ground to apprehend danger from the legislature as from any other quarter? Legislation is always exercised by the majority. Majorities have nothing to fear; for the power is in their hands. They need no written constitution, defining and circumscribing the powers of the government. Constitutions are only intended to secure the rights of the minority. They are in danger. The power is against them; and the selfish passions often lead us to forget the right. Does it not seem conclusive then, that this provision was intended to restrain the legislature from enacting any law affecting injuriously the rights of any citizen, unless at the same time, the rights of all others in similar circumstances were equally affected by it. If the law be general in its operation, affecting all alike, the minority are safe, because the majority, who make the law, are operated on by it equally with the others. Here *607 is the importance of the provision, and the great security it affords.
Apply these principles to the case before the court. A particular description of the debtors of the bank of the state are assumed to be in default, and to have incurred liabilities to the bank. The right of action has already-accrued, and the courts of common law have clearly exclusive jurisdiction. Here the defendants would have been entitled to a trial by j ury, and to an appeal to the supreme court. In this state of the case, the legislature passed the act under consideration, giving to this court the jurisdiction of those particular causes only; direct the mode of trial to be according to the principles of a court of equity, (which is without jury,) and declare that there should he no appeal, at the same time the law, as it regards all others, remaining unchanged.
This law only acts upon individual cases, and is the same in principle, as if a law had been passed in favor of some one merchant, enabling him, by the method therein prescribed, to take judgment against his debtors without the right of appeal. The interest which the people have in the bank, is a sufficient reason why the legislature should feel a deep solicitude to secure its funds, but is no reason why they should overstep the limits of legislative authority to effect this end. Nor is it any reason why the court should enforce an act passed without sufficient deliberation, which infringes, as we believe, the constitution. Two important privileges, the trial by jury, and the right of appeal, are by this act taken away in these special cases, while every other member of the community, having incurred similar liabilities, enjoys them. The fact, that the persons embraced in this act form a class of the debtors to the bank, tends no more to give it the character of a general law, than if the act had operated on one individual debtor only, whose case might have some peculiarity distinguishing it from that of all other debtors. Other banks,' and many merchants, and many other members of the community, have contracts similar to the one set out in this bill. In order to have avoided the force of *608 the objection to this act, it should have operated equally on all, these; and because it has not done so, it is not “the ]aw 0f the land.”
j have the highest respect for the legislature as a co-ordinate department of the government; and whenever they pass an act, the presumption is in favor of the power: nor are we to disregard it upon a mere' doubt, nor unless constrained by the high obligations imposed by our oaths to support the constitution. But when we cannot enforce the act and support the constitution, the act is not law, and imposes no obligation.
Peck, Judge.
An act was passed on the 13th January, 1830, by the Legislature of Tennessee, providing that a special court should be organized, to consist of Jacob Peck, one of the judges of the-supreme court; Nathan Green, one of the Chancellors of this State; and William E. Kennedy, one of the Judges of the circuit courts, any two of whom might form a quorum to do business; with power to appoint a clerk and a sergeant at arms; to sit in Nashville; to meet on their own adjournments; and “with power to do all other things properly appertaining to their appointments, necessary to be done for the purposes of effecting the objects hereinafter mentioned.” The act then prescribes the duty to be performed, and confines it to hearing and deciding upon complaints of the Bank, “that any person or persons are in default, or indebted to said Bank for any breaches of trust, or money they may have received and failed to account for, or for any other cause;” giving power to direct process and bring such persons, &c. But it provides, that the jurisdiction should be confined to such cases only as are made on behalf of the 'Bank, and that the court should not be authorized to pronounce a judgment or decree against any person or persons except such as by over-checking or otherwise, have improperly received the money, billsj notes, or other valuable papers belonging to, or on deposit in said Bank, or such person or persons, officers of said institution, as may have been guilty *609 of breaches of trust or other fraud, or made an improper use of the money belonging to, or on deposit in said Bank, and such others as may be connected with them, and the securities of such as may be liable. '
The jurisdiction to be exercised is to be supreme in its sphere, and no right of appeal is allowed. It is specially provided, that “the principles governing the courts of chancery, shall be those by which said court shall be governed.” The court may compel the parties to appear and answer interrogatories; and if, on a full and fair investigation, it should appear thj^fi any person or persons complained of, were in default or indebted, the court should forthwith pronounce such judgment or decree as may seem right according to the facts of the case, (without regard to the form or substance of the complaint,) against the person or persons so in default or indebted, and their securities, if any there be.
There are other provisions in the act, such especially as give rules for process, execution, &c. and there is a final clause, authorizing the court to form its own rules of proceeding, so far as they have not been expressly provided.
The persons specified as members of the court, have considered it their duty to convene according to the provisions of the act, and they have appointed the officers required and authorized thereby.
Complaint has been made by bill, against Charles Cooper and his securities, charging the former, in substance, with having withdrawn money from the Bank at sundry times, to a specified amount; and with having been guilty of gross neglect, in not keeping the accounts and books of the Bank, in such manner as to show the state and condition of the institution. The bonds given by Cooper and his securities for a faithful execution of the trust reposed in him, are exhibited. Subpoenas having been served, the defendants have appeared and pleaded, that this court has no jurisdiction or right, to hear and determine the question under the act constituting the court, but that the county or circuit court of Davidson county, have *610 jurisdiction of the said matters of complaint. This question has been ably argued, as well for the Bank as in sop-port of the plea.
Not pretending to follow the order pursued in the discussion of the question, I shall consider:
1st. Does the act in question, in effect, deprive the parties of the benefit of a trial by jury, and therefore conflict with the sixth section of the Declaration of Rights?
The right of trial by jury, is not in express terms'taken away by the act. It may be implied, that the common law right oLtrial by jury in this, being a civil case, is taken away byThat part of the act which directs the court to proceed according to the principles of equity. Still, from the last clause of' the act, as one of the judges sitting under it, I would deny no man the trial of the facts of his case, an issue being tendered, by an impartial jury. The constitution and the law both being before me, I would as far as possible, construe the latter in such way as to make it consistent with the former, and give to the parties in this particular, what is common to all other suitors. The rules that I would adopt should not be arbitrary; at least, I would endeavor to guard against appearances that might justify the imputation. But while I say this, I am free to own, that an act which gives such extraordinary powers, powers so nearly bordering on discretion, so speedy, so summary, and so regardless of forms, ought certainly to be regarded by the judge with circumspection; under it he should move with caution and hesitation, especially if it have the appearance of pointing singly to its object,
It might indeed be said, and with much propriety, that the right of trial by jury is taken away, when it is not contemplated that an issue should be made, and the means of procuring a jury is not provided. Honest judges might differ as to the propriety, or even possibility of calling a jury under the act; and a doubt upon a point so important, ought to induce the judges here to turn the cause over to that tribunal where the jury cannot be denied.
2ndly. Is the act creating this tribunal, consistent with *611 those parts of the constitution which give the legislature power, from time to time, to direct and establish courts?
The power given in the constitution to establish courts is not disputed; but the question raised is, whether the character of this court is such, that there is a discordance between its powers, and the powers assigned to the courts by the constitution. The framers of the constitution never dreamed of admitting the exercise of arbitrary powerin any department of the government. The legislative, the executive, and the judicial departments, are three lines of equal length, balanced against each other, and the frame work forming an equilateral triangle, becomes stronger, the more its parts are pressed. Like the foundation of our religion, the trinity, it is the key on which the whole arch rests. The people have erected it; they have seen its suitability for duration, and compared its proportions with the external view of the pyramid, whose age is untold, and which alone, of all the works of man, has withstood the ravages of time.
Seeing these powers balanced, it is our province to look into the constitution. It is there, a judge must measure length with a legislator, or with an executive officer.
The first question is, how shall we know him to be a judge? And the next, how shall we know the extent of his powers? For answers to these questions, we must resort first to the constitution.
A judge then, is one elected to the office by the legislature. When commissioned, what may he do ? By the constitution, he shall take an oath. If of the superior court, he shall be a justice of oyer and terminer, and general jail delivery throughout the State. For the furtherance of justice, he may use the extraordinary writ of certiora-ri in civil causes. He shall appoint his own clerk, to hold the office during good behaviour, and such clerks may issue his writs. (See Const. Art. v.) He shaZl keep his court open, that every man, for an injury done him, may have remedy by due course of law.
What may he not do? He shall not charge jurors with regard to matters of fact, though he may declare the law. *612 He shall not sit in his own cause, nor shall he preside in the trial of the causes of these connected with him by blood or marriage. He shall not, in his discretion, lay a gne on anyone above $50. He shall see that the right of trial by jury shall not be violated. He shall not carry into effect, any law made to punish acts previously committed, for such a law would be ex post facto. Nor shall he carry into effect any retrospective law, or law impairing the obligation of contracts.
In short, the vi, vn, vm, ix, x, xr, xrr, xm, xiv, xv, xvi, xvii, xxiii, xix, xx and xxv articles of the Bill of Rights, are expressly addressed to the judges. The judges are not only forbidden to violate these sections themselves, but they are clothed with ample power, and required by the most solemn obligations, to see, that as to any and every citizen, they are not violated in one jot or tittle. To carry into effect these objects, the statutes and common law have laid open a warehouse of ways, means and processes, that the power of the judges may not for want of plans, he defeated in upholding constitutional rights.
But, it may be asked,- what are we to infer from all this? I answer, that in looking into the constitution to find the dimensions of justice, she is seen laying her hand as well upon the eastern extremity of the State as upon the western. The higher order of courts have a superintending control every where. The inferior are supposed to be kept in constant check, and their measure of justice to each,meted out in uniformity; and while we see this system pervading one whole, we are called upon to notice, as well for our own safety, as for the safety of the citizen, within a limited “sphere of action” a tribunal from which no appeal Iks; unusual duties assigned to some of its members, though consistent enough with others; in short, our circle,bounded to a span, is found to be within another circle; two powers, the one moving forward with means broad and ample, the other instructed to look to the object, not to the means.
*613 To say the least of it, the court in this view, appears in a questionable shape, if examined and squared by the creating power of courts, the constitution. Pains have been taken to find similar examples in our acts, but the search has been in vain* The present act, in throwing together the materials for a court, has gone a step further than any before. The acts authorizing interchanges of ridings amongst circuit judges; directing one circuit judge to sit in the court of another, when the latter could not preside; creating caveat courts out of judges who were competent, and who, consistently with their vocation, could hold them, were none, of them radical changes. Rules for tests and determinations were not altered. No juries were taken away, even by implication. But before us, we have a patch work from several pieces, and I would say to the counsel-who resists the plea, that xve all ought to remember, that the particolored garment of Joseph, made his brethren hate him, and he was sold.
But the amalgamation, if S may use that term, of the judges, to make a court, would not appear so exceptionable, if we did. not consider, that at this moment each judge is demanded in his proper sphere; a sphere assigned to him when he took upon himself the duty; and that in fact he is here acting in the place of, and for another judge, to whom, by the law of the land, this case more properly belongs. I ought not to sit here, and anticipate his writ of prohibition.
Srdly. Is the act upon its face, partial in its provisions, and personal in its application, affording advantages to one side, and withholding them from the other, by such provisions as are found not to apply to other portions of the community,liesides those specified in the act?
This is a delicate question. I am confident that the framers of the law did not intend that the act should be subject even to such a suspicion; but times do arise when men are hurried into measures, which on cool deliberation, they might themselves condemn. Putting intentions aside, what are the provisions of this act? It provides, *614 that, touching a few individuals, the court should by summary process, call them before the judges, and fix at pleasure, the time of their appearance, put interrogato-rjeg j.Q princjpals in bonds, hear testimony, adjudge and award execution against both them and their securities, for breaches of trust, indebtedness, and malfeasance in office. All this the judges are empowered to do by this act, without regard to form or substance. The court is to be governed by the rules of equity. It is supreme in its sphere of action, and from its judgments there can be no appeal.
It will be remarked here, that the judges are selected. It is very possible that the framers of the law did not anticipate that they would be time-serving. It is however a high trust. The task would seem to be easy, for they were to inquire andgive judgment or decree; and there is additional compensation given for the service, which may at least be taken as some proof that the legislature thought the duty not properly belonging to the office of judge, before held by the members of this court, respectively.
The duty assigned to this court is aside from the duty-belonging to its members as judges; the act relates to the few specially named in it; the rules by which we are to be governed, are not those common to the rest of the community; the right of trial by jury, is made discretionary, if not absolutely taken away by the act, and the right of appeal is taken away in express terms: under these circumstances, is the law of the land likely to be afforded to the defendants?
When I am acting under the constitution of my country, and the equal distribution of rights becomes a question, I am not to forget that our ancestors knew, before the making of our constitution, that when a Sidney was to be tried, a Jeffries had to be selected.
Week and feeble as my walk may be in the station I occupy, it shall be my endeavor to move with evenhanded justice. The franchises of the State might become *615 dangerous engines in the hands of the crafty, if judges could be moulded to meet exigencies.
Upon this last point, I am clear that the act is unconstitutional and void.
Kennedy, Judge.
The statement of the material parts in this case, it is believed, is correctly made by Judges Peck and Green. It is not necessary to repeat them here. The only question for our consideration is the sufficiency of the defendant’s plea; an examination of which, necessarily and unavoidably involves the consideration of the constitutionality of the statute organizing this court, and defining its powers and jurisdiction. It will be seen by reference to that statute, that the legislature has by name designated three individuals, filling three different and distinct judicial offices, to hold this court, and has required of them the performance of certain duties, in the discharge of which, important judicial functions, and a jurisdiction of an extensive character, materially concerning the rights of private individuals, have tobe exercised.
. That the legislature has the power to establish such superior and inferior courts of law and equity as may be deemed necessary for the public interest, is beyond all controversy. The first section of the fifth article of the constitution is conclusive on this point, which says, “the judicial power of the state shall be vested in such superior and inferior courts of law and equity as the legislature shall from time to time direct and establish.” This section does not require, as defendants’ counsel have insisted, that these superior and inferior courts shall be such alone as existed at the time the constitution was adopted; nor does it limit the number. The legislature may establish as many courts of both law and equity, as they may think proper; nor are they bound to make any one subordinate to another, as was also insisted. The territorial limits of the jurisdiction, and the extent and description of jurisdiction that the several courts shall have and exercise, are referred exclusively to the wisdom and discretion of the legislature; and when such courts are established, it is *616 competent for the legislature to change, modify, enlarge, or abridge their jurisdiction at pleasure.
To ^is conclusion I bring my mind from the consider-atiorij ¿hat j find fn th.e constitution, no clause either expressly or impliedly denying to the legislature the exercise of such a power; on the contrary, I conceive the power is clearly granted in the clause quoted. But when these several courts have been established, the constitution prescribes the manner of appointing the judges. It cannot be by legislative enactment. It must be by joint ballot of both houses. Article 5th, section 2, of the constitution, is in these words: “the General Assembly shall by joint ballot of both houses appoint judges of the several courts of law and equity.” In doing this, the members exercise an electoral, and not a legislative function. After the election, it is the duty of the Governor to commission them, which he issues under the seal of the state. (See article 2, section 16; acts 1809, ch. 49, sec. 7.) The election by joint ballot, and the commission by the Governor, designate the office and the person of the judge. When the office is ascertained, and the judge appointed, he must look to the general laws of the land for his duties, and the jurisdiction of his court. It is not competent for the legislature by name to appoint a judge to a particular court for which he has' not been specially elec-tee; that would be assigning him to an office contrary to the express language of the constitution, which cannot be. But, it is insisted, this is not creating a new office, but only an assignment of new duties. Whether it be the creation of a new office or not, perhaps it is not material now to decide. It may not be, and most probably is not, a new office. It is certainly a new courts totally distinct from, and unconnected with the courts of the several judges respectively, now presiding. It is not a branch or part of the circuit courts; nor of the chancery courts; nor of the supreme court. It does not proceed according to the rules prevailing in either of these courts. But it is emphatically a court sui generis; the statute calls it a “special court.'' If then, it is not of the class of courts for *617 which we have been respectively appointed by joint ballot of both houses,and commissioned by the Governor, how is it that we can be called on to hold it? The legislature can only assign the duties of the judges, by general laws definingthe jurisdiction.of their courts; but surely they cannot prescribe and define the jurisdiction of the courts, byenacting that particular judges by name shall do particular things. The operation of this action of the legislature, would be upon the judges individually, and not upon the courts of which they are judges. This would be contrary to the fundamental principle of municipal law, which Blackstone, in his Commentaries, 1st vol. page 44, says must be “permanent, uniform, and universal.” It would be of the nature of an edict, order, or command, the operation whereof would be spent upon the judges individually, without relation to the community in general,, to the particular offices which they fill, or to the particular class of judges to which they respectively belong.
It appears to be the policy of the law, that all the judges and other public officers, shall act upon oath. In the act of 1809, ch. 49, sec. 7, the form of the oath is prescribed for the circuit judges, a part of which is in these words: “that I will faithfully and impartially discharge and perform all the duties incumbent on me as a circuit judge” By section 24, the judges of the supreme court must take an oath, “to discharge faithfully and impartially all the duties of their office.” In the acts organizing the chancery courts, the judges are also required to take an oath to dis. charge the duties of chancellor. If this court form not a part of the system of the circuit courts, chancery courts, or supreme court, as I have already shown it does not,the judges holding this court would be performing high judicial functions, without having taken any oath of office. This statute prescribes no oath. The duties to be performed by the judges severally in their respective offices, do not include the class of duties assigned them in holding this particular court. Nor are such duties as these embraced by the oaths of the judges respectively. The conclusion is irresistible, that the high and important duties of the *618 judges holding this court, would be performed without affording the people the security resulting from the solemn obligation of an oath. To illustrate these several positions, suppose the legislature should pass a law directing the judges of the supreme and chancery courts to hold a court in this town, for the trial of criminal causes only. The constitution directs the establishment of several courts of law and equity for the state, to hold which the judges shall be appointed by joint ballot of both houses. This would be one of such several courts. The judges assigned to hold it, would not have been elected for that purpose by joint ballot; consequently their appointment for such duties would not be according to the requisitions of the constitution, and would be therefore void.
The premises assumed, and the conclusions drawn in this argument, do not deny to the legislature the power to abolish the supreme court, or any other court, and to organize a new court in its stead, or to distribute amongst the other remaining courts, the jurisdiction of the one so abolished; as by appointing a court of conference tobe holden by all the circuit judges, which they could evidently do. In that case, the action of the legislature would be upon the "office, affecting equally all in the same office, whereas by the statute under consideration, particular judges are designated by name, and ordered to perform certain duties not necessarily connected with their respective offices, and which are not enjoined upon the other judges filling the same offices. In the first case, the action of the, legislature would be constitutional, by affecting all the citizens equally in the uniform operation of the law upon all the judicial officers of the same class; whereas, in the case before us, the statute operates upon the judges individually, in the nature of an order or command, which is neither “uniform” nor “universal,” but partial and void.
But there is another point of view in which the statute is equally or more objectionable, than that in which we have already considered it. It establishes a special and *619 extraordinary tribunal, clothed with special and extraordinary powers, and called on to exerqise a special and extraordinary jurisdiction over a particular class of liabilities, of a particular set of debtors, to a particular corporation. Before this court, that corporation alone can sue. The case can only be determined on the complaint of the Bank, or some one in its behalf. In section 3d, it is expressed, that the provisions of this law “shall not extend to any complaints except such as are made on behalf of said bank, nor shall said court be authorized to pronounce a judgment or decree, against any person or persons, except such as by overchecking or otherwise, have improperly received the money, bills, notes or other valuable papers belonging to, or on deposit in said bank, or such person or persons, officers of said institution, as may have been guilty of breaches of trust or other fraud, or made an improper use of the money belonging to, or on deposit in said bank, and such others as may be connected with them, and the securities of such as may be liable.” By this provision, a particular class of debtors is designated from amongst the debtors to this institution, and jurisdiction assigned to this tribunal alone, which is to be exercised in a summary manner. The same section, defining the mode of proceeding, uses these words: “said court shall direct process to be issued to bring such person or persons immediately before them, to examine them on interrogatories touching said complaint, to require the production of all books and papers in relation thereto, to examine all witnesses that maybe produced on either side,” &c. And afterwards, to pronounce such sentence or decree as the. court may deem right, without regard to form; which debt, when so ascertained by judgment, shall constitute a lien upon the property of the debtor, from the passage of the statute. The right to exercise such powers, is not delegated to any other tribunal in the land.
The statute contemplates the arraignment of certain particular debtors to this bank, before a tribunal where no other person can sue or be sued, and to have their rights ascertained and settled by rules that apply to no *620 other debtors of this institution, nor to any other member ^ communi(;y. Does such legislation harmonize with true spirit of our constitution? In section eight of the Bill of Rights, it is declared, “that no freeman shall be taken or imprisoned, or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or in any manner destroyed, or deprived of his life, liberty or property, but by the judgment of his peers, or the law of the land.” That the defendants were not intended to be subjected to the payment of these demands by the judgment of their peers before this forum, is manifest. The nature of the proceedings and the organization of the court, were not intended to refer the case to a jury. A jury, in a chancery court,'cannot be constitutionally'demanded by either, party. It is only called, if at all, to aid the chancellor. The proceeding here is somewhat according to the course of chancery practice. It is clear then, that under this statute, they are denied the privilege of being judged by “theirpeers,” as the whole matter of proof is submitted to the court. Nor is their liability to be fixed and ascertained by the “law of the land.” No individual can be subjected to any liability, but by one or the other of these two courses of proceeding, per judicium parium suorum, nisi per legem terra,. What is “the law of the land?” These words are technical, peculiar to ihe science of the law, and must receive that construction and meaning which the science has assigned them. This is a rule well settled by the law, when technical terms are employed in any art or science.
At the time when our constitution was formed, these words had assigned them by the law, a specific and definite signification. This was known to the members of the convention at the time they employed the expression. If so, we are obliged to give them the same meaning which was known to have been assigned to them by the law at that time. For the purpose of ascertaing the import of these words, it is unnecessary to refer to their origin. The history of Magna Charta is identified with the law. The adjudications upon that instrument before *621 •our revolution,"settled the meaning and signification of this expression. In the second part of Coke’s Institutes, page 51, after showing various objections to the employment of other words in connexion with these, which might give them a partial operation, the author says, “but that the law might extend to all, it is said, per legem term, by the law of the land.” Does this statute apply to all the citizens of the state? Does it apply to all the debtor class of society? Or to all those who are indebted to the bank? It does not. It is intended to affect only a few of those who are indebted to that institution. It cannot th'erefore with propriety be called legem term, the law of the land. Other authorities on this point might be cited, but the universal admission of the accuracy of Coke in such learning, makes it unnecessary. If it were necessary, the opinion of Judge Catron in the case of Vanzant vs. Wad-del, in manuscript, could be produced. It is directly in point. In that case, the judge says, that “a partial law, tending, directly or indirectly, to deprive a corporation or individual of rights to property, or to the equal benefits of the general and public' laws of the land, is unconstitutional and void.” “The clause, lam of the land, means a general and public law, equally binding upon every member of the community.” “The rights of every individual must stand or fall by the same rule or teo, that governs every other member of the body politic or Hand,’ under similar circumstances; and every partial or private law, which directly proposes to destroy or affect individual rights, or does the same thing by affording remedies leading to similar consequences, is unconstitutional and void. Were this otherwise, odius individuals and corporate bodies would be governed by one law, and the mass of the community, and those who made the law, by another; whereas a like general law, affecting the whole community equally, could not have been passed.”
The right of trial by jury, has at all periods in the history of this country and of England, been held in high estimation, and the framers of our constitution, not content to secure it by the use of the words employed in Magna *622 Charfa, uper judicium parium suorumf” and contained in i ” . . « , the section of the Bill of Rights just referred to, have expressly inserted a provision on that point. The 6th sec-¿jon 0f gjp 0f lights, is in these words: “that the right of trial by jury shall remain inviolate.” This right is not secured to these defendants by this statute. Whilst all other persons indebted to the bank by common law obligations or otherwise, of whom there is a vast number, and all other persons indebted to private individuals throughout this community, are permitted to litigate their debts and other controversies before the courts of common law, where the right of trial byjury is secured and enjoyed, this defendant and a few others are referred to this forum, and subjected to a mode of proceeding unknown in any other tribunal, and to which no other citizen is subject. If this be not a violation of the right of trial by jury, I know not what is. It is said by the counsel for the bank, that the legislaturehaspassed many statutes similar to this, where the right of trial by jury has been taken away; and thevarious cases where judgmentupon motion has beenau-thorized, are referred to. I acknowledge the force of the authority of adjudication upon analogous cases. It oftentimes presents a forcible and conclusive argument. But it is a sufficient answer to the argument uponthispoint, to say, that the cases and decisions referred to, though analogous, were not made in this precise case; and I can never follow precedent, in the line of analogy, when it leads to an infraction of the constitution. Hence the necessity of a frequent recurrence to first principles. If we follow precedent, and move on according to the analogy of cases, we shall be led from step to step, until the constitution itself will be lost amidst the subtleties of the law. When precedent is established in the construction of statute or common law, I concede the propriety of following it, unless flatly absurd or unjust. But every judge and other public officer, when called on to do an official act, must judge of the constitution for himself; for no precedent, however grave, and no adjudication, however respectable, can warrant a violation of that sacred instrument. In *623 point of fact, courts presume that every act of the legislature is constitutional. From a deference to the legislative department of the government, this presumption necessarily arises. Legislators are under the same obligation to observe the provisions of the constitution, that is incurm bent on the judges and other public officers of the land. But so long as the judiciary is a separate and independent branch of the government, it must result, that if a legislar tive act should be plainly and obviously opposed to the letter and spirit of the constitution, the judiciary is incapable of observing the injunctions of the statute, and regarding the constitution at the same time. One. or the other must be dropped; and as the constitution is paramount to any law the legislature can make in opposition to it, the judges are left without any alternative. All the departments of government are equally bound by the constitution. It is the warrant of attorney, or authority, under which all must act. So far as that authority is exceeded, the act is void. But this excess should be plain and obvious, for it is the duty of courts to reconcile the provisions of a statute with the constitution, if by a'fair construction it can be done. But when they cannot do that, and the statute is plainly and clearly repugnant to the true spirit of the constitution, it is their duty to main» tain the constitution, and declare'the statute void; which, in this case, we feel ourselves constrained to do.
Bill dismissed.

 Ante, page 260.