Catron, Ch. J.
delivered the opinion of the court.
The preliminary question is, whether John H. Martin, Esquire, judge for the time being, who tried this cause, had power and jurisdiction to preside. He was appointed by virtue of the act of 1827, ch. 37. Judge Williams certified to the Governor that he was from ill health unable to hold his courts without endangering his health of life: whereupon Mr. Martin was commissioned to hold the courts of the third judicial circuit, and transact the duties of the Judge of said circuit, until he should be notified by Judge Williams that the health of the latter was restored, so that he was capable of attending to his own' duties; which notification should terminate Mr. Martin’s commission and powers as a circuit Judge. Had the legislature the power to bestow on the Governor, or any other agent, the authority of appointing Judges of general jurisdiction ? It is an axiom in government, that what the legislature has not power itself to do, cannot be conferred on an agent; the principal having.no authority, the deputy can have none. 1 Verger’s Rep. 457, Marr vs. Enloe. Whenever a state'constitution prescribes a particular manner in which power shall be executed, it prohibits every other mode of executing such power. On that particular subject, the authority is exhausted by the constitutional provision, and an attempt to render it nugatory by law, would be an attempt at repeal. The constitution being the paramount law, the act of assembly coming in conflict would be void. Let us apply this rule • to the present case. The fifth article of the constitution provides, that “the general assembly shall, by joint ballot of both houses, appoint judges of the several courts of law and equity, who shall hold their respective offices during their good behavior.” Here the constitution has made no exception in favor of the legislature giving authority by law to an agent to appoint judges. The two houses acting jointly, and voting by ballot, is the only 'appointing pow~ *273 er Wider tile constitution. It is not assumed that this appointment was made under the constitution, but it is admitted that the legislature had no reference to that instrument when passing the act of 1827. The General Assembly proceeded, we are informed, and no doubt correctly informed, upon the following idea of its powers: that the legislature was omnipotent as the British Parliament, save so far as it was restrained by the constitution; and although the convention had pointed out a particular mode of appointing Judges, and declared they should hold their offices during good behavior, yet this did not inhibit the General Assembly from resorting to a new mode, based on its original powers, unrestricted; and which appointment was entirely without the pale of the constitution, neither sanctioned nor prohibited by it. It is true, the legislatures of the States have the same powers the British Parliament had, save so far as those powers are restrained by the Federal and State constitutions; and it is equally true, that the -Parliament of Great Britain has often authorized the King to grant special commissions to men of law learning to act as judges, revocable -at his pleasure; but a commission revocable at the pleasure of any other than the executive, is not recollected. Even the British Parliament has never gone so far as the act of 1827. Why was it provided by the constitution, thatjhe Judges appointed should hold their respective offices during their good behavior? Our Declaration of Independence tells us, when enumerating the usurpations of the British King authorizing the separation: He has made Judges dependant on his will alone for the tenure of their offices, and the amount and payment of their salaries.” Of course, dependent upon his pleasure, and subject to be used as instruments, so long as they were obedient, and when they were otherwise, subject to be turned off, and more pliant ones put in place. Were this commission sanctioned, we might presently fall on the old eyil. The legislature has just as litt *274 le change the appointing power of their own mem" bers. The free men over twenty one, elect the repfe-sentatives; and these deputies of the people, acting jointly in one body, elect the judges of the people. To this there is no exception. Truly the 8th section of the fifth article of our constitution declares, that in case all the Judges of the supreme court shall be interested in the event of any cause, or connected to all or either of the parties, the Governor of the State shall in such case specially commission three men of law knowledge, for the determination thereof.
This clause never contemplated that the judge for the whole people, and of general jurisdiction, extending to 'every member of society, should be appointed by the governor. Cases in courts, which the judges in office should not be competent to decide, are alone referred to; and to decide between the parties to such particular causes, men of law knowledge maybe appointed. In all other matters, the regular judges are in the exercise of their full powers. These the legislature had no authority to take away, without resignation or removal; they continued during good behavior; and when they once ceased, they ceased forever. In violation of these principles, the act of 1827 authorizes a circuit judge to surrender every attribute of judicial power into the hands of the governor, to be by him conferred on another, so' long as the circuit judge should see fit and proper, were it during life; but whenever it suited his health or convenience, he had power to bestow on himself the full power and authority conferred on his late successor, depend-ant wholly on his will for the tenure of the office. Suppose the legislature had by the act of 1827, provided, that whereas Judge Williams was infirm, they appointed John H. Martin, Esquire, in his stead, for one year, with all the powers and jurisdiction said Williams had, and of which the latter was thereby deprived for said term; and that said Martin should receive the salary of Judge Wil *275 liams: Would the act have been constitutional? Here one judge would have been put out,- and another put into office, by a mere legislative act. If a judge could be removed for a year, he could for ever; if one' could be-appointed for a short time, so he could for any time. If the legislature could not do this matter directly, it could not empower the governor to do what itself had no power to do.
The commission of John H. Martin was merely void,' and he incapable of doing any judicial act.
It is supposed the acts of Assembly passed, and acted-upon, authorizing the governor to appoint special judges of this court, in particular causes depending therein, where a lawful number of the judges were not qualified to de-' cide the same, were also beside any power conferred by the constitution, and rested on the unrestricted and origi-ginal powers of the legislature; and that the sanction of such laws after mature consideration by this court, gave a construction to the constitution which could not be departed from in this instance. The great question presented in 1826, on the appointment of special judges,was whether the acts of Assembly directing the governor to appoint, were a true exposition of the constitution.
Men of law learning had been appointed' to try causes specially named in the commissions, because a competent number of the regular judges were disqualified to hear and determine the same.
1. It was objected that all the judges of this court must be incompetent in the particular case, before men of law learning could be commissioned to determine it.- To this it was answered, that when the constitution was framed, the old superior court was in existence, and especially referred to;' any one of the judges of which, was competent to hold the court. That the first section of the fifth article had authorized the legislature to vest the judicial power in such superior and inferior courts of law and equity as the General Assembly should from time to time *276 see fit to direct and establish. In 1809, the jurisdiction had been taken from the superior courts and vested in the supreme and circuit courts; that the legislature had the power to declare what number of judges should constitute a competent court to hear and determine causes; and the eighth section meant that if there were not a competent court, in any one case, the governor by virtue of the first and eighth sections, might appoint men of law learning to make up the competent number of judges required by law. To give any other construction to the eighth section, would prevent any improvement on the old superior court system, or indeed any useful change, and in effect repeal the first section of the fifth article. That such a construction was too narrow, and would strike at the power of the supreme and circuit court themselves. So the court thought, and on this point no material difficulty was experienced. The next and difficult question presented was, that by the acts of assembly it was declared the judges of this court who had been of counsel, whilst at the bar, in any cause therein depending, should not be competent to hear and determine the same. These acts of assembly were most ably and violently assailed as unconstitutional and void; and quite as ably supported, as consistent with the constitution. The court was upon this branch of the argument called upon to construe the second clause of the eighth section. “No judge shall sit on the trial of any cause where the parties shall be connected with him by affinity or consanguinity, except by consent of parties.” In doing this, it was necessary again to look to the whole instrument. The first section (article 5,) gave power to establish courts as the exigencies of society might require; and it gave the legislature the right to vest the judicial power in such tribunals as it might see fit. Of course there was no restraint in conferring and distributing the power. Jurisdiction might be given, withholden, or withdrawn, at pleasure.
It is certainly true, that every court has its jurisdic *277 tion proscribed by the legislature; and it was supposed in the special causes, that the legislature had the power to withdraw from any one member jurisdiction under particular circumstances, deemed sufficient. As that the judge had decided the cause in the chancery court, or been of counsel for one party, and stood committed in opinion and prejudice. In such cause the court should be deeemed as not having thatnumber belonging to it, and proceed accordingly. That more power may be conferred upon one judge of a court, than on another member of the same court, is true, and daily practised in eyery State where the presiding justice has additional duties to perform; and it cannot be doubted, that the legislature might require and appoint additional judges to decide constitutional questions, providing that not less than four or six should have jurisdiction to declare an act of assembly void.' The statutes pointing out the governor’s duty in appointing special judges, or men of law-learning, to try causes named in the commissions, involved most complicated considerations. The court could not say but that the legislature had given the constitution a correct interpretation. Such had been the exposition, since the necessity of a constitution had arisen on the new organization of the judiciary, say as early as 1812. The court, therefore, adopted the well known rule in such cases, of letting the law stand, and executing it. An act of Assembly should plainly violate the constitution before the courts will pronounce it void. All the adjudications, therefore, made in reference to special appointments, were made on the true construction of the spirit and meaning of the constitution of Tennessee; and the men of law knowledge appointed by the governor, and commissioned in form as prescribed by the letter of the constitution, had no attributes of judges save in the single cause named in the commission, in which if there was a mistake of a Christian name of some party, the commission has been holden to communicate no power. These commissions, *278 therefore, issued iu virtue of, and under the constitution; that to Mr. Martin over and beside that instrument. The judgments, decrees, and orders made by him, are all void, must be set aside, and the causes remanded to the respective courts from whence they came, to be proceeded in.
Whyte and Peck, Judges, concurred.