Txjbxey, J.
delivered the opinion of the court.
Two grants were issued by the State of North Carolina, one for two thousand five hundred acres of land to John Rice, the other for one thousand five hundred to Joseph Greer. These grants are founded on entries in what is called the Big Hatchie connection, in the Western District of the State of Tennessee. This connection consists of a great number of locations made by Isaac Roberts, *294 previous to the year 1789, lying north and south of a common base line, and mutually dependant on each other. At the time these locations were made, the base line was run by Roberts, and trees at different places marked upon it. No other lines whatever were run or marked. The two entries of Rice and Greer lie on the north side of the base line, and adjoin each other. The lessor of the plaintiff claims under the grant of John Rice, and the defendant under that of Joseph Greer. These grants do not, by their location, conflict with each other; and the defendant’s possession is confined to the limits of Greer’s grant. This would seem to be conclusive upon the rights of the parties; and would be, but fora difficulty which has been produced by a procession of this connection of land under the provisions of the act of 1819, ch. 1. This act was passed to make provision for the adjudication of North Carolina land claims, and for satisfying the same by an appropriation of the vacant soil south and west of the Congressional reservation line. By the 7th section it is provided, that each surveyor shall publish the boundaries of his district, notifying all persons desirous of making entries within the same, of the day on which his office will be opened for the reception of entries, and requiring all persons claiming lands therein, by virtue of a grant or grants from the State of North Carolina, to cause the same to be processioned before the 1st day of October, 1820.
The 8th section provides, that if any person or persons claiming as aforesaid, shall fail to identify his, her or their grants agreeable to and within the time prescribed by the 7th section, it shall and may be lawful for the surveyor of the District in which such grants may lie, to cause the same to be run and plainly marked in the manner prescribed for original surveys, agreeably to the calls, provided they are special or depend upon the grants, the locality of which may be clearly identified; the lines of which when thus surveyed, and marked out and laid down upon the general plan, it shall not be lawful for any subsequent enterer to cross, but the same shall be notice to all subsequent enterers.
The owners of the Big Hatchie connection^ neglected to comply with the provisions of the 7th section of this statute within the time prescribed, and the surveyor of the district in which it lies, proceeded to perform the duties required-of him by the 8th section. In doing so, he commenced at the beginning corner of the base line, and in running east according to course, from not making a proper *295 allowance for the variation of the compass,Nand a neglect in searching for the marked trees on said line, he varied from the line originally run by Roberts south, to a considerable extent from the beginning to the end. He were not more successful in marking the dividing lines north and south between the different claims lying on the base line. By means of these mistakes, every grant is removed from the position it originally occupied, and made to cover lands not originally embraced by its lines. The consequence of this has been, that unless the owners of the lands in this connection Would mutually agree to hold either by the old locations of Roberts, or by the procession made under the act of 1819, there will be a very entangled confliction of boundary between them. This they have not done. For the lessor of the plaintiff claims under the procession, and the defendant under the original location; and it is this that produces the controversy between them, for by the procession the grant of Rice is made to cover a portion of the land contained within the grant of Greer according to the entry, and of which the defendant is in possession.
Upon the trial in the circuit court, the judge charged the jury, that if a grantee of lands in the Western District, failed to have his land processioned within the time prescribed by the act of 1819, and the surveyor of the district caused the same to be done and spread upon the general plan of his district, it would be binding and conclusive upon the grantee, and that he would be estopped from denying or disputing the lines thus established, although they might vary from the original, and cover other and different lands than were covered by the original location. There was a judgment for the lessor of the plaintiff, to reverse which this writ of error is prosecuted. The question for consideration is, whether the defendant is bound by the procession, and estopped thereby from claiming the land covered by his entry and grant according to their ealls.
That the land in dispute is covered by the entry and grant of Joseph Greer, can admit of no controversy; and of consequence he and those claiming under him have had the legal title thereto. The question then is at once presented, if it be lost, how has it been done 1 It is not pretended it has been done by voluntary conveyance ; and the 8th section of the Declaration of Rights in the Constitution of Tennessee, in conformity with magna charta, provides, that no man shall be disseised of his freehold but by the judgment *296 of his peers or the law of the land. It has not been done by the judgment of his peer's, and it only remains to inquire whether it was by the law of the land.
It is contended that the act of 1819, is the law of the land, and that by a fair construction of it, the defendant has lost his right to the land that he originally owned, and is compelled to take in lieu thereof, other and different lands as specified by the erroneous procession of the surveyor under the powers vested in him by the act.
Whether a statute is the law of the land within the meaning of 'the 8th section of the Bill of Rights, always depends upon two propositions:
1st. That the legislature had the constitutional power to pass it.
2d. That it is a general and public law, equally, binding upon every member of the community.
If we were to give the construction asked for by theles'or of the plaintiff to the act of 1819, we should find it exceedingly difficult, when tested by the above propositions, to declare it the law of the land. But we are relieved of the necessity of determining this delicate question, because we do not believe the construction asked for to be correct. Suppose the legislature to have the power to pass a statute, such as it is argued the act of 1 <S 19 is, by which a freeman is to be deprived of his freehold, yet this result cannot be,produced by equitable construction, but must be by positive enactment. If the power exist, it is a high prerogative, and we will not intend that the legislature design to exercise it, unless they say so in express words. No argument from policy or inconvenience, or the harmony of system, can be permitted to have any weight, in the decision of such a question.
Has the legislature provided, then,by the act of 1819, expressly, that a grantee who neglects to hove his land processioned as therein directed, shall be bound by an erroneous procession made by the surveyor, and estopped thereby from claiming to his true line? Assuredly not. Indeed, if construction could be resorted to for the purpose of establishing this principle, it tvould be found exceedingly difficult, if not impossible, so to construe the statute.
It is unquestionably true, that it was a thing very much to be desired that all the old grants in the Western District should be identified before the offices were opened under the act of 1819, for the reception of entries; and no doubt the legislature had great *297 anxiety to have this done, in order to prevent a conflict of titles and consequent litigation, with the evils of which they were well acquainted by previous experience; and no doubt they did design tp do whatever they legally might, to cut off this fruitful source of mischief. They have provided that in the case of neglect on the part of the grantee to have his land processioned, the surveyor may do so from the best information he can procure, and cause the same to be placed upon the general plan; and that no entry shall be made within the limits thus processioned. If in addition to this, they had said that the grantee, in consequence of his neglect, should be bound by the procession thus made, and estopped from saying that it did not cover his land, all danger of conflict and confusion would have been completely obviated. Who can doubt that nothing but an apprehended want of power prevented this being done? The statute is drawn with marked ability, and bears in its every feature, strong marks of a deep anxiety that the Western District should not be visited by that evil resulting from the uncertainty of land titles, which had afflicted so heavily the other portions of the State. Every thing is done to prevent conflicts between the old grants and new entries, except compelling the grantees to abide by an erroneous procession of the surveyor. If the grantee procession his land under the 7th section of the statute, there is an end of it. If the surveyor procession'it correctly, there is likewise an end of it. If it be processioned by the surveyor incorrectly, all persons are prohibited from interfering therewith; so that the grantee may take it if he pleases. So that the only contingency is a refusal on his part to be bound by an erroneous survey on the part of the State. The not having provided for this by express enactment, is almost conclusive evidence, that it was not so designed.
We then think the charge of the circuit judge was erroneous, because the statute does not expressly undertake to disseize the defendant of his freehold, and that if such a thing could be done by construction, such is not the legitimate construction of the statute. This decision is not in conflict with the case of McLemore and Brown, determined at Reynoldsburgh in 1829; that was a contest between the grantee and enterer. The grantee chose to take the land assigned by the State, and the entry was pronounced void under the 8th section of the act of 1819. The court expressly re *298 fused in that case to determine the question made in this, as being unnecessary for its decision.
The judgment of the circuit court will be reversed, and the case remanded for a new trial.