**Jerry H. SUMMERS,**
**Petitioner–Appellee,**

v.

**Mayor Robert L. THOMPSON, et al.,**
**Respondents–Appellants.**

Supreme Court of Tennessee,
at Knoxville.

May 23, 1988.

Rehearing Denied July 18, 1988.

Jacqueline E. Schulten, Soddy–Daisy City Atty., Chattanooga, W.J. Michael Cody, Atty. Gen. & Reporter, Kevin Steiling, Asst. Atty. Gen., Nashville, for respondents-appellants.

Jerry H. Summers, Jack R. Brown, Robert L. Moon, Chattanooga, for petitioner-appellee.

Deborah S. Swettenam, Ass'n of Criminal Defense Lawyers, Dickson, J. Anthony Farmer, Trial Lawyers' Ass'n, Knoxville, for amicus-curiae.

OPINION

DROWOTA, Justice.

This direct appeal raises a significant issue of Tennessee constitutional law, that is, whether certain statutes permitting a municipal judge to be terminated at will are valid. The Petitioner, Jerry H. Summers, sat as city judge for Soddy–Daisy, Hamilton County, Tennessee, for 14 years until he was summarily terminated by the Board of Commissioners of Soddy–Daisy (the Board). Petitioner sought review of his termination by a common law writ of certiorari, contending that at will employment of a judge violated the requirement of separation of powers under Article II, § 1, of the Constitution of Tennessee. The Chancery Court of Hamilton County found that the at will employment provisions of T.C.A. §§ 6–21–501 and 16–18–102 violated the State Constitution and ordered Petitioner's reinstatement. Respondents, including the Attorney General, have brought this direct appeal to this Court as the sole determinative issue is the constitutionality of these two statutes. T.C.A. § 16–4–108.

I.

Given the posture of this case, a common law writ of certiorari, the evidence consists primarily of the record made at the meeting of the Board.[1] The record of this meeting is rather meager, although some other evidence in the form of affidavits, exhibits to the Petition for Writ of Certiorari, and Respondents' Answers to Requests for Admission are also included in the record. Respondents did not, however, offer any evidence in their favor at the meeting, rely-

---

**1.** Petitioner was terminated at a regularly scheduled public meeting of the Board of Commissioners held on October 3, 1985.

ing on the terms of the statute under which they acted. The facts are relatively simple.

Petitioner was appointed to serve as city judge of Soddy–Daisy City Court in 1971 and served continuously in that position for 14 years. The parties have relied upon T.C.A. § 6–21–501(b)(3), which provides that "[t]he board of commissioners shall appoint a city judge who shall be an attorney-at-law entitled to practice in the courts of the state and who shall serve at the will of the board."[2] Although several Boards of Commissioners were elected following Petitioner's initial appointment, he was never reappointed or removed by any Board until the meeting of October 3, 1985. Petitioner apparently served without significant conflict with any successive Board; however, according to Petitioner's statement before the Board at the October, 1985, meeting, friction began to develop over the previous summer with the Mayor, Robert L. Thompson, the members of the Board, and the Chief of Police. The exhibits to the Petition, consisting of a series of letters between the Police Chief and Petitioner and between the Mayor and Petitioner, corroborate these allegations made by Petitioner at this meeting, which allegations were reiterated in the Petition itself. Apparently, the Mayor and members of the Board attempted to influence the judicial functions of the city court by attempting to utilize the court to increase city revenue, by requesting that the authority to issue warrants be delegated to city officers or employees who were not magistrates, and by seeking to establish a fixed schedule for appearance bonds, which would be set by clerks. In addition, Mayor Thompson attempted to persuade Petitioner to impose harsher sentences on first offenders in cases involving driving under the influence but Petitioner resisted, contending that judicial discretion was involved in determining the appropriate punishment within the ranges permitted by statute. Evidently, when the Mayor and Board concluded that

Petitioner could not be persuaded to conduct city court in the manner in which they wished, they concluded that the at will employment statute could be utilized to terminate Petitioner and replace him with a more malleable city judge.

At a regularly scheduled meeting of the Board on October 3, 1985, without notice to Petitioner or to the citizens of Soddy–Daisy, Petitioner was terminated. No cause for termination was given by the Board of Commissioners. According to the transcript of the meeting, Mayor Thompson made a motion to change the city judge effective immediately, which motion was carried unanimously. Several citizens protested Petitioner's removal and pressed the members of the Board to give some cause for his removal. The Mayor repeatedly refused to provide any reason for Petitioner's removal, stating that the city attorney had advised the Board not to respond to such questions. When citizens continued to press for some explanation, the city attorney stated that the city charter granted the Board the authority to appoint a city judge who served at will and that the Board was not required to have any reason for termination of at will employees. Some citizens persisted in their protests, a few expressing their suspicions that the Board intended to turn the city court into a "cash register court."

Although the formal termination vote had already been taken, the Board invited Petitioner to speak. He stated that politics had been injected into the operation of the court by the Mayor, Board, and Chief of Police. He explained that he had been pressured to increase city revenue and to impose harsher penalties on certain types of offenders. Noting that compliance with the Board's requests would infringe upon his judicial functions, Petitioner warned that the potential for abuse of the city court was high, depriving persons brought before the court a fair and impartial hearing.

---

**2.** The parties also considered T.C.A. § 16–18–102 (Supp.1987) as applicable; it was enacted a few years subsequent to Petitioner's initial appointment in 1971. It provides that the ordinance establishing the office of municipal

judge, authorized by T.C.A. § 16–18–101, "shall provide: ... [t]hat the municipal judge shall be appointed by the governing body of the municipality, to serve at the pleasure of the governing body...." T.C.A. § 16–18–102(3).

On November 27, 1985, Petitioner filed his Petition for Writ of Certiorari in the Hamilton County Chancery Court challenging his termination as arbitrary, capricious, and illegal in that the statutes permitting at will employment of a city judge violated the Constitution of Tennessee. Other claims were asserted by Petitioner as well. Although the Mayor and Board denied many of the allegations of the Petition, by an order of February 9, 1987, the issue was narrowed to the constitutionality of the statutes in question and additional claims asserted by Petitioner against the Board were severed. On March 6, 1987, the Chancellor filed his Memorandum Opinion. Although finding no violation under the language of the statute, as written, the Chancellor observed that city court meets regularly and exercises substantial, local judicial authority and noted the importance of the constitutional issue presented. Finding that judicial independence and impartiality could not be assured if the city judge had no definite term and was subjected to the whims of the local legislative body, he concluded that the at will provisions of T.C.A. §§ 6–21–501(b) and 16–18–102 violated the principle of separation of powers and ordered Petitioner's reinstatement until the next Board of Commissioners election. Notices of Appeal were duly filed by Respondents.

## II.

The majority of this Court does not find it necessary to address the constitutional issue presented by this case because the issue may be resolved by a proper construction of the statutes involved.[3] Moreover, the holding of this case is expressly limited to those city courts that are not vested with concurrent jurisdiction with a General Sessions Court, which is an inferior court, under T.C.A. § 6–21–501(b) or T.C.A. § 16–18–101 (Supp.1987). The jurisdiction of these city courts is wholly limited to traffic violations or violations of city ordinances, as the judges of these courts

have no authority to impose fines exceeding $50 or to impose extensive terms of imprisonment and, as a practical matter, are essentially administrative judges.[4] Such a judge is not cloaked with the powers of a judge of an inferior court within the meaning of Article VI, § 1. *See State ex rel. Haywood v. Superintendent, Davidson County Workhouse,* 195 Tenn. 265, 270–271, 259 S.W.2d 159, 161 (1953).[5] We now turn to the proper construction of the statutes at issue.

T.C.A. § 6–21–501 has two separately operative subsections. Subsection (a) grants only a limited jurisdiction to city courts that are not covered by the terms of subsection (b). Under subsection (a), "[t]he city judge shall have jurisdiction in and over all cases for the violation of and all cases arising under the laws and ordinances of the city." Subsection (b) courts, however, are "vested with concurrent jurisdiction and authority with courts of general sessions of the county ... in all cases of the violation of the criminal laws of the State of Tennessee within the limits of such municipalities." T.C.A. § 6–21–501(b)(2). Furthermore, the applicability of subsection (b) is limited by the population classifications of subsection (b)(1). If a city incorporated under the City Manager–Commission Charter does not come within the population ranges of subsection (b), then only subsection (a) can apply and that city court can exercise very limited jurisdiction. A careful examination of the application of this rather complicated statutory scheme is useful.

T.C.A. § 6–21–501(a) was originally enacted in 1921 as part of an act to provide a uniform City Manager–Commission Charter. 1921 Public Acts, chapter 173, article 9, § 1. In 1965, this subsection was amended to read as it does in its present form. 1965 Public Acts, chapter 330, § 1. Until 1979, subsection (a) was the sole provision of what is now codified as T.C.A. § 6–21–501. What is now subsection (b)

---

**3.** These statutes are reproduced in an addendum to the opinion.

**4.** See, e.g., T.C.A. §§ 6–19–101(29); 6–21–502.

**5.** These city judges may be appointed to serve indefinite terms at the pleasure of the governing body of the municipality.

was amended piecemeal into the statute in 1979, 1981, and 1982. T.C.A. §§ 6–21–501(b)(1)(A), (b)(2), and (b)(3) were enacted together in 1979. 1979 Public Acts, chapter 309, § 1. Two years later, subsection (b)(1)(B) was added by 1981 Public Acts, chapter 176, § 1. The following year, two more amendments were enacted to add subsections (b)(1)(C) and (b)(1)(D). 1982 Public Acts, chapters 888 and 889. The first two subdivisions of (b)(1), that is, (A) and (B), required the governing body of the municipality to adopt the statute within a specified time for it to have become effective. The last two expressly extend the jurisdiction of municipal courts in the cities within the stated population ranges over violations of T.C.A. § 55–10–401 (driving under the influence). Subsection (b) must be read as a whole and can be operative only in municipalities properly coming within its classifications.

From our research, apparently when subsection (b)(1)(A) was enacted in 1979, only Williamson County, which then had a population of 34,423 by the 1970 Federal census, came within its terms. Presently Campbell County (34,841) and Dyer County (34,663), by the 1980 Federal census, are within the classification of (b)(1)(A). We have been unable to find any county presently covered by (b)(1)(B) as county populations are reflected in the 1980 Federal census; under the 1970 census, again only Williamson County was within the range specified. For the population ranges of subsections (b)(1)(C) and (b)(1)(D), only Lawrence County (1980 population of 34,110) falls within these classifications; the cities of St. Joseph (population 897) and Loretto (population 1612) are located in Lawrence County and incorporated under T.C.A. §§ 6–18–101, *et seq.* Soddy–Daisy, however, has a population of 8,388 (1980) and is located in Hamilton County, which has a population of 287,740 according to the 1980 Federal census. Clearly, Soddy–Daisy is not within

any classification of subsection (b), and Hamilton County, even by the 1970 Federal census,[6] could not have qualified under any provision of subsection (b). If no provision of subsection (b) is applicable, then only subsection (a) is operative.

In addition to T.C.A. § 6–21–501(b), the parties relied on T.C.A. §§ 16–18–101 and 16–18–102.[7] T.C.A. § 16–18–101 is applicable to "any municipality ... having a mayor's court or a municipal court presided over by the mayor ... or the city recorder ... and *having no other provision for a municipal judge for such municipality....*" (emphasis added). T.C.A. § 6–21–501(a) expressly provides that a city court shall be established under the City Manager–Commission Charter, and "[w]henever the office of city judge is not filled by the appointment of some other person, the recorder shall be the city judge." Otherwise, the city recorder under the City Manager–Commission Charter does not ordinarily exercise judicial functions. T.C.A. §§ 6–21–401; 6–21–403; 6–22–101. Since T.C.A. § 6–21–501 already specifically provides for a city court for municipalities with a City Manager–Commission Charter, sections 16–18–101 and 16–18–102, which are general provisions, are not operative under that charter system.

Although the parties litigated this case on the theory that T.C.A. §§ 6–21–501(b), 16–18–101, and 16–18–102 were applicable, we have concluded that these statutes were misapplied by the parties and the trial court. Soddy–Daisy City Court has not been shown on this record to constitute a subsection (b) court under T.C.A. § 6–21–501 and T.C.A. §§ 16–18–101 and 16–18–102 do not apply[8]; thus, being a subsection (a) court, the city court at issue is not vested with any concurrent jurisdiction with an inferior court within the meaning of Article VI. Without any concurrent jurisdiction, a city judge of a subsection (a)

---

**6.** At that time, Hamilton County's population exceeded 250,000.

**7.** See footnote 2, *supra.* These provisions were enacted in 1973 (1973 Public Acts, chapter 330) and were subsequently amended by 1975 Public Acts, chapter 231.

**8.** We note that this case would have been better and more adequately tried as a declaratory judgment action.

court does not exercise constitutional judicial power. While we think that the apparent motives of the Board were highly questionable as a matter of public policy, we can only conclude that under the terms of these statutes and the provisions of the Constitution, the action of the Board must be upheld; however, this case amply demonstrates the need to secure a definite term of office for subsection (a) judges, but the limited jurisdiction of subsection (a) courts over city ordinances, with their restricted fines and penalties, rather than over any State laws, does not entail an exercise of constitutional judicial power. On these facts, and given our construction of the relevant statutes, at least absent a showing of actual prejudice to a litigant before the city court as a result of the Board's attempt to exercise improper influence over the city judge, we decline to extend the reach of Article VI beyond the exercise of jurisdiction of an inferior court.

### III.

Accordingly, because we have concluded that the parties litigated the case on an incorrect reading of the statutes, we hold that the action of the Board in removing Petitioner was within their power under T.C.A. § 6–21–501(a), which is the applicable statutory provision in this case. We tax the costs equally among the parties. The judgment below is reversed and the case is dismissed.

HARBISON, C.J., and FONES, COOPER and O'BRIEN, JJ.

### ADDENDUM OF STATUTES

TENNESSEE CODE ANNOTATED SECTIONS:

**6–21–501. Jurisdiction of city judge— Appointment and qualifications.**—(a) There shall be a city court presided over by a city judge. The city judge shall have jurisdiction in and over all cases for the violation of and all cases arising under the laws and ordinances of the city. The board of commissioners may appoint a city judge who shall serve at the will of the board. He shall have such qualifications and receive such compensation as the board may provide by ordinance. Whenever the office of city judge is not filled by the appointment of some other person, the recorder shall be the city judge.

(b)(1)(A) The provisions of this subsection shall become effective in any municipality incorporated pursuant to the provisions of chapter 18 of this title, having a population of not less than one thousand six hundred (1,600) nor more than one thousand seven hundred (1,700) according to the federal census of 1970, or any subsequent federal census, which lies within a county having a population of not less than thirty-four thousand (34,000) nor more than thirty-five thousand (35,000) according to the federal census of 1970, or any subsequent federal census, upon approval within fifteen (15) days after May 15, 1979, by two-thirds (⅔) vote of the governing body of such municipality and upon certification of such approval by the presiding officer of the governing body to the secretary of state, notwithstanding the provisions of any other law to the contrary.

(B) The provisions of subsection (b) shall also become effective in any municipality incorporated pursuant to the provisions of chapter 18 of this title, having a population of not less than four thousand fifty (4,050) nor more than four thousand one hundred fifty (4,150) according to the federal census of 1970, or any subsequent census, which lies within a county having a population of not less than thirty-four thousand four hundred (34,400) nor more than thirty-four thousand five hundred (34,500) according to the federal census of 1970, or any subsequent federal census, upon approval within fifteen (15) days after May 15, 1981, by two-thirds (⅔) vote of the governing body of such municipality and upon certification of such approval by the presiding officer of the governing body to the secretary of state, notwithstanding the provisions of any other law to the contrary.

(C) In municipalities incorporated pursuant to the provisions of chapter 18 of this title, having a population of not less than eight hundred ninety-five (895) nor

more than nine hundred (900) according to the 1980 federal census or any subsequent federal census, which are located within a county having a population of not less than thirty-four thousand seventy-five (34,075) nor more than thirty-four thousand one hundred seventy-five (34,175) according to the 1980 federal census or any subsequent federal census, the city judge shall have concurrent jurisdiction with the general sessions judges and circuit court judges to try persons charged with the offense of driving while under the influence of an intoxicant as prohibited by § 55–10–401, within the geographic boundaries of such municipalities.

(D) In municipalities incorporated pursuant to the provisions of chapter 18 of this title, having a population of not less than one thousand six hundred (1,600) nor more than one thousand six hundred thirteen (1,613) according to the 1980 federal census or any subsequent federal census, which are located within a county having a population of not less than thirty-four thousand seventy-five (34,075) nor more than thirty-four thousand one hundred seventy-five (34,175) according to the 1980 federal census or any subsequent federal census, the city judge shall have concurrent jurisdiction with the general sessions judges and circuit court judges to try persons charged with the offense of driving while under the influence of an intoxicant as prohibited by § 55–10–401, within the geographic boundaries of such municipalities.

(2) There shall be a city court presided over by a city judge. The city judge shall have jurisdiction in and over all cases for the violation of and all cases arising under the laws and ordinances of the city. In addition, the city judge shall be vested with concurrent jurisdiction and authority with courts of general sessions of the county, as set forth in title 40, in all cases of the violation of the criminal laws of the state of Tennessee within the limits of such municipality.

(3) The board of commissioners shall appoint a city judge who shall be an attorney-at-law entitled to practice in the courts of the state and who shall serve at the will of the board. He shall receive such compensation as the board may provide by ordinance. All fees shall be paid into the treasury of the city and are not to be considered a part of the compensation of the city judge. In the absence or disability of the city judge, the mayor may designate a qualified person to serve as city judge. Any vacancy in the office of city judge shall be filled by the board of commissioners.

**16–18–101. Governing body may provide for office of municipal judge.**—In any municipality in this state having a mayor's court or a municipal court presided over by the mayor of the municipality or the city recorder of the municipality and having no other provision for a municipal judge for such municipality, the governing body of the municipality is authorized by ordinance to provide for the office of municipal judge.

**16–18–102. Contents of ordinance.**— The ordinance providing for the office of municipal judge shall provide:

(1) That the municipal judge shall be vested with the judicial powers and functions of the mayor or city recorder of such municipality, and shall be subject to the provisions of law and the municipality's charter governing the mayor's court or the municipal court presided over by the mayor city recorder;

(2) For qualifications of the municipal judge;

(3) That the municipal judge shall be appointed by the governing body of the municipality, to serve at the pleasure of the governing body;

(4) That vacancies in the office shall be filled for the unexpired term by the governing body;

(5) For oath of office and bonding of the municipal judge before he shall enter upon the duties of this office;

(6) That the cost of making the bond of the municipal judge shall be paid by the municipality;

(7) That the salary of the municipal judge shall be fixed by the governing body before his appointment, and shall not be altered during his term of service; and

(8) For the designation of a person to serve as judge during the absence or disability of the municipal judge.

DROWOTA, Justice, concurring.

I do not disagree with either the result or the construction of the statutes in the majority opinion; however, I cannot agree that the result reached by the Court should be announced in a constitutional vacuum and thus write separately to make explicit my views of the constitutional rule implicit in the holding of the majority. While I am of the opinion that the proper construction of these statutes justifies the result reached, that construction of itself is an inadequate explanation of the result without also stating the constitutional basis for the ruling in this case. A fully reasoned resolution of the issues presented is also demanded not only for the foregoing reasons but because the parties litigated the questions and the issues are squarely raised, despite the fact that the statutes were not properly construed below. The significance of the issues, the likelihood that they will be presented again, and their ripeness for resolution make compelling the necessity of an integrated opinion embodying the constitutional principles upon which the proper construction of the statutes in question is obviously based in the majority opinion. Consequently, I express my views of the constitutional issues in this concurring opinion. The facts need not be restated.

### I.

The issues in this case involve one of the most fundamental principles of American constitutional government, an independent judiciary. Several components must be clearly understood for the resolution of these questions, not the least of which is the relationship of municipal governments to the State government and how that relationship is affected by the principles of separation of powers. The exercise of the essential powers of government is divided by the Constitution at the local level, despite some constitutional tolerance of endowing local governing bodies or officials with limited judicial capacities. Article II, § 2, expressly contemplates such tolerance, but the judicial power itself has defining characteristics and when exercised it must be exercised independently of the other branches, just as each of the other powers must operate. Restraints on government are as necessary, perhaps more necessary, in one's home town as in the State capitol. A concept of home rule is that local government operates most immediately on the daily lives of the people.

### A.

The Tennessee Constitution, Article II, § 1, expressly states that "[t]he powers of the government shall be divided into three distinct departments: the Legislative, Executive, and Judicial," and by Article II, § 2, "[n]o person or persons belonging to one of these departments shall exercise any of the powers properly belonging to either of the others, except in the cases herein directed or permitted."[1] *Underwood v. State*, 529 S.W.2d 45 (Tenn.1975), recognized that "the doctrine of separation of the powers, as set out in Article II, §§ 1 and 2, of the Constitution of Tennessee, is a fundamental principle of American constitutional government." *Id.*, at 47. Moreover, " '[i]t is essential to the maintenance of republican government that the action of the legislative, judicial, and executive departments should be kept separate and distinct....' " *Richardson v. Young*, 122 Tenn. 471, 492, 125 S.W. 664, 668 (1909). The tension and play among these powers provide restraint and maintain the limits placed on the government in all its departments to protect the rights and liberties of

1. Consistent with these provisions, Article II, § 26, prohibits a judge from being a member of the General Assembly.

the citizens and to deter abuses of power.[2] *See Bank of the State v. Cooper*, 10 Tenn. 599, 611 (1831) (Opinion of Peck, J.). Each department acts within its own sphere as an independent and co-equal branch of government and can be subject to the will of no other department when performing its particular functions. The primacy of these fundamental principles is undisputed but because the defining powers of each department are not always readily identified, recognizing an encroachment by one department upon another is sometimes difficult. What is necessary is to find the operating principles at stake in any given case and determine their application to those circumstances based on the evils against which they were intended by the people of the state to provide protection. Those principles decide the case or controversy presented by the facts.

When the thirteen colonies declared their independence from Britain in 1776, one of "the causes which impel[led] them to the separation" was that the King of Great Britain had "made judges dependent on his will alone, for the tenure of their offices, and the amount and payment of their salaries." Not only had the recent history of the colonies demonstrated that one of the most immediately oppressive and dangerous instruments of repression was a court subject to arbitrary political whims rather than to the dictates of law, but the history of Europe provided glaring examples of the extent to which judicial power could be abused. The Star Chamber and the Inquisition are sufficient for the point. Before a court whose purpose is to achieve a predetermined, unguided and unrestrained objective, no individual can hope to stand and receive a fair hearing. A court acting in accord with well-defined procedures and pursuant to the authority of a restraining Constitution and the rule of law, independent of the political system for its term of service and its compensation, was considered essential to the success of a constitutional system and to the preservation of fundamental rights. As this Court stated at the time of the adoption of the Constitution of 1834, "[t]he independence of the judiciary ought to be anxiously preserved unimpaired; not on account of the individuals who may happen to be judges—they are nothing—but on account of the security of life, liberty, and property of the citizen." *Fisher's Negroes v. Dabbs*, 14 Tenn. 119, 139 (1834).

Article VI, § 1, of the Tennessee Constitution states that "[t]he judicial power of this State shall be vested in one Supreme Court and in such Circuit, Chancery and other inferior Courts as the Legislature shall from time to time, ordain and establish; in the Judges thereof, and in Justices of the Peace." [3] In the same section establishing the judicial power, the Constitution permits the Legislature to "vest such jurisdiction in Corporation Courts as may be deemed necessary...." Although the Legislature is given wide discretion concerning the organization of the judicial department, the judicial power residing in the courts is wholly preserved by this provision of Article VI and guaranteed as a separate power by Article II, § 1. While the existence of certain generic courts is required and the Legislature has no authority to abolish these, the independent exercise of the judicial power is what the other departments of government have no authority to control. The characteristics defining this power need not be fully stated here but the essential nature of that power is well established under Tennessee law.

While "[i]t is well-settled that the Legislature has the power not only to create inferior courts under the constitutional provision but to diminish or to enlarge or to transfer their jurisdiction in the interest of efficiency and economy," *Duncan v. Rhea County*, 199 Tenn. 375, 385, 287 S.W.2d 26, 30 (1955), "[a] court is an instrumentality of sovereignty, the repository of its judicial power, with authority to adjudge as to the rights of person or property between ad-

---

2. *Cf.* Article I, § 2, and Article XI, § 16.

3. The Constitution recognizes that the judicial power is a combination of judges and courts. *See, e.g., In re Cumberland Power Co.*, 147 Tenn.

504, 508, 249 S.W. 818, 819 (1923); *Jackson, Morris & Co. v. Nimmo & Thornhill*, 71 Tenn. 597, 608–610 (1879).

versaries. The presence of a judge or judges is necessary as an essential element of a court." *Mengel Box Co. v. Fowlkes*, 135 Tenn. 202, 206, 186 S.W. 91, 92 (1916). Thus, the judicial power entails the exercise of judicial discretion, that is, "[i]n its narrower sense it is the capacity of the individual judge presiding over a particular court to perceive and apply to the facts of each case in judgment the law of the land, so that in each case the rights of the parties under the facts of the case may be declared and enforced according to the law of the land." *Scott v. Marley*, 124 Tenn. 388, 395, 137 S.W. 492, 493 (1911). Once a court is established, the judicial power of Article VI, § 1, vests in it as "an independent *power*, and, where it has jurisdiction, a sovereign power, just as much as the legislative itself." *Fisher's Negroes v. Dabbs, supra*, at 159 (emphasis in original).

"In any court, however, whatever decree the court shall give must be the result of its own judgment, in the performance of the functions assigned it by the constitution. No other department of government has the right to indicate or dictate what that judgment shall be. This would be to usurp the judicial function, confided exclusively by the constitution to the judicial department."

*Perkins v. Scales*, 2 Shannon's Tenn.Cases 235, 237 (1877). The judgment of a court operates directly upon a person and each person's case must be determined on the facts pursuant to the applicable law. To protect the party brought before a court, the judge must not only be impartial but must be independent of the will or whim of the political departments. As Justice Freeman recognized in his dissenting opinion in *State ex rel. Coleman v. Campbell*, 3 Shannon's Tenn.Cases 355, 376–377 (1875), "a system of courts is an anomaly without judges, would be a mere abstraction with nothing of substance in it—is too thin and shadowy for the practical work of a constitution of government for a state. The system of necessity involves the officers as well as the offices [of] the judges or else we can have no courts." Continuing, Justice Freeman then emphasized that judicial independence is sacrificed if "the judge will

hold his office at the pleasure of a few men ... [who could terminate the office] because the judge had dared, in the discharge of his duty, to refuse to bend his will, or subserve his personal ends, or lend the aid of the judiciary to ... personal aggrandizement." *Id.*, at 390–391. In other words, the performance of the judicial function and the office of the judge merge to sustain that independence necessary to operate as a check and balance on the other branches of government. *See, e.g., In re Cumberland Power Co.*, 147 Tenn. 504, 507–508, 249 S.W. 818, 819 (1923). Ultimately, therefore, the evil to be avoided by establishing an independent judiciary is that

"[i]f the legislature, possessing a large share of executive power, be permitted to exercise judicial power also, or control the action of judges within their peculiar sphere, the liberty of the citizens, under the government of good legislators, would be in imminent peril, and under bad ones would be entirely destroyed."

*Fisher's Negroes v. Dabbs, supra*, at 138. To assure an independent judiciary, the office of a judge must be secured against the political caprice of other departments of government. *See, e.g., The Judges' Salary Case*, 110 Tenn. 370, 388–389, 75 S.W. 1061, 1065 (1903); *State ex rel. Orr v. Leonard*, 86 Tenn. 485, 488–489, 7 S.W. 453, 454–455 (1888). No judges, no courts may be "dependent upon [another's] pleasure, and subject to be used as instruments, so long as they were obedient, and when they were otherwise, subject to be turned off, and more pliant ones put in place. Were this [practice] ever sanctioned, we might presently fall on the old evil." *Smith v. Normant*, 13 Tenn. 271, 273 (1833).

B.

Several forms of municipal government are available under the statutes in Tennessee. The charters by which these governments are formed are authorized in these statutes. T.C.A. §§ 6-1-101, *et seq.*, permits a Mayor–Aldermanic Charter to be adopted and delegates the powers of this form of city government. A City Manag-

er–Commission Charter may be adopted pursuant to T.C.A. §§ 6–18–101, *et seq.*[4] A Modified City Manager–Council Charter is permitted under T.C.A. §§ 6–31–101, *et seq.* A metropolitan or consolidated city-county government may be established under T.C.A. §§ 7–1–101, *et seq.* Each statutory scheme delineates the organization and distribution of municipal powers. Although known as municipal corporations, they share little in common with private corporations at this point in history.[5]

The controlling statutes recognize that municipalities have legislative and executive powers and, while judicial functions are sometimes allocated to officers who also serve in other capacities, the basic tripartite distribution of powers is reflected to some extent in each charter system. The larger and more complex the municipal organization, the more distinct these divisions. Although the distinctions among the powers are not as well-defined at the level of municipal government, the exercise of each type of power is nevertheless recognized, even in the simplest form of city government. Thus, under T.C.A. § 6–1–406, the mayor is not only the executive officer but is also a member of the city legislative body, the aldermen, and by T.C.A. § 6–2–403, the city recorder is given certain judicial functions. T.C.A. § 6–2–201 enumerates the corporate powers of the Mayor–Aldermanic Charter, including authority to impose and collect fines for violations of local ordinances and to enact "all bylaws and ordinances necessary and proper to enforce the powers granted, not inconsistent with the Constitution and laws ... of the State of Tennessee." T.C.A. § 6–2–201(16), (19). Under the City Manager–Commission Charter, "[t]he legislative and all other powers except as otherwise provided by this charter are delegated to and vested in the board of commissioners," T.C.A. § 6–20–205(a) (Supp.1987), but the mayor, who has a seat on the board and may vote, has no veto power under T.C.A. § 6–20–213. The general powers of the board include a limited authority "[t]o enforce any ordinance, rule, or regulations, by means of fines, forfeiture, penalties, and imprisonment...." T.C.A. § 6–19–101(29). Under this system, a city court is expressly required by T.C.A. § 6–21–501.[6] The city judge is authorized to enforce city ordinances, T.C.A. § 6–21–502, required to maintain a docket, T.C.A. § 6–21–503, and may issue arrest warrants, T.C.A. § 6–21–504, as well as set appearance bonds, T.C.A. § 6–21–505. Appeal from the city judge's decisions are to the circuit court of the county. T.C.A. § 6–21–508. In contrast, under the Modified City Manager–Council Charter, by which all legislative, corporate, and other powers of a city are vested in the city council, T.C.A. § 6–31–101, while the city judge under the City Manager–Commission charter serves at the will of the appointing board, T.C.A. § 6–21–501(a), (b)(3), the city judge under the Modified City Manager–Council system is elected by popular vote for a term of four years. T.C.A.

---

4. This is the type of municipal government adopted by Soddy–Daisy, which was incorporated in 1969.

5. For instance, governmental subdivisional immunity is provided by T.C.A. §§ 29–20–101, *et seq.*, and the distinction between proprietary and governmental functions has been abolished at least as far as tort claims are concerned. *See Jenkins v. Loudon County,* 736 S.W.2d 603, 608 (Tenn.1987). *But cf.* T.C.A. § 6–1–217. Private corporations obviously do not share this immunity.

6. T.C.A. §§ 16–18–101 and 16–18–102 (Supp. 1987), authorize the governing bodies of certain municipal governments to enact ordinances establishing the "office of municipal judge," T.C.A. § 16–18–101 (Supp.1987), who "shall be vested with the judicial powers and functions of the mayor or city recorder" and who "shall be appointed by the governing body of the municipality, to serve at the pleasure of the governing body...." T.C.A. § 16–18–102(1), (3). This statute expressly recognizes that judicial power is being delegated and permits the transfer of the judicial functions of the mayor or city recorder to a city judge. For instance, T.C.A. § 6–2–403 vests concurrent jurisdiction with General Sessions Courts in the "recorder or other proper designated officer ... in all cases of violation of the criminal laws of the state, or of the ordinances of the municipality, within the limits of the municipality," and under T.C.A. § 16–18–101, a city court created under this statute would exercise the same jurisdiction as the recorder under T.C.A. § 6–2–403.

§ 6–33–102(a), (b). Removal of this city judge is controlled by T.C.A. § 6–33–104. The tripartite organization of city government becomes most marked under the Metropolitan system in large part because city and county governments are consolidated. Under T.C.A. § 7–3–311(c), municipal judges are elected for a term of eight years. Thus, despite a sharing of some of the governmental powers or functions among the divisions of municipal government, the general principle of separation of powers is maintained by these statutes.

Moreover, this Court has long recognized "that cities and counties are arms of state government and exist for the convenience of the State for purposes of local government." *City of Knoxville ex rel. Roach v. Dossett*, 672 S.W.2d 193, 196 (Tenn.1984). *See also State ex rel. Chapdelaine v. Torrence*, 532 S.W.2d 542, 550 (Tenn.1975); *Hill v. State ex rel. Phillips*, 216 Tenn. 503, 508, 392 S.W.2d 950, 952 (1965); *McConnell v. City of Lebanon*, 203 Tenn. 498, 504, 314 S.W.2d 12, 14 (1958); *Moore v. State*, 159 Tenn. 468, 469, 19 S.W.2d 233, 233 (1929); *Gregory v. City of Memphis*, 157 Tenn. 68, 70, 6 S.W.2d 332, 332 (1928); *Deming v. Nichols*, 135 Tenn. 295, 303, 186 S.W. 113, 115 (1916); *O'Haver v. Montgomery*, 120 Tenn. 448, 463, 111 S.W. 449, 452 (1908); *Ballentine v. Mayor and Aldermen of Pulaski*, 83 Tenn. 633, 643 (1885); *State v. Wilson*, 80 Tenn. 246, 257 (1883); *Mayor and City Council of Nashville v. Fisher*, 1 Shannon's Tenn.Cases 345, 356 (1874); *Trigally v. Mayor and Aldermen of Memphis*, 46 Tenn. 382, 390 (1869). They derive their authority and powers from the Legislature and are equally bound by the Constitution of the State. "It is true that the legislature has power to grant special charters to municipal corporations, and may, in general, include within those charters such peculiar provisions, not in conflict with the constitution, as may be needed for the convenience and well being of the particular community." *Malone v. Williams*, 118 Tenn. 390, 425, 103 S.W. 798, 807 (1907). *See also Mayor and City Council of Nashville v. Fisher, supra*, 1 Shannon's Tenn.Cases at 356–357; *Ballentine v. Mayor and Aldermen of Pulaski,*

*supra*, at 643–645. A municipality can no more enact an ordinance contrary to the organic law than the General Assembly. Since the municipality obtains only the power the Legislature may delegate, it can exercise no power that the Legislature is unable to confer. *See State v. Armstrong*, 35 Tenn. 634, 655–656 (1856); *Smith v. Normant, supra*, 13 Tenn. at 272. As stated in *Malone v. Williams, supra*, "all municipal ordinances are by their very nature, and the subordinate character of municipalities as compared with the nation and the State, subject to the limitations prescribed by the constitution and laws of the State and of the United States." 118 Tenn. at 420, 103 S.W. at 806. Nevertheless, "[t]he great diversity of municipal corporations required to meet the wants of local communities seems to demand a larger liberty of legislation than private corporations." *State v. Wilson, supra*, at 259. Thus, at least at the local level, strict adherence to the departmental division of powers is not always required, as "it has long been recognized that it is impossible to preserve perfectly the theoretical lines of demarcation between the executive, legislative and judicial branches of government." *Underwood v. State, supra*, 529 S.W.2d at 47 (citations omitted). Regardless, Tennessee cases have recognized that the powers of municipalities are constituted by the legislative, executive, and judicial functions of government, *e.g.*, *Lotspeich v. Mayor and Aldermen of Town of Morristown*, 141 Tenn. 113, 119–122, 207 S.W. 719, 721 (1918), and *Johnson v. Brice*, 112 Tenn. 59, 69–70, 83 S.W. 791, 793–794 (1903), and no statute or municipal charter could vest all these functions completely in one body. *Malone v. Williams, supra*, 118 Tenn. at 418, 103 S.W. at 805.

### C.

The place of municipal or corporation courts within the judiciary is a function of the extent of jurisdiction vested in them by the Legislature. The power of the Legislature to create these courts is manifest under Article VI, § 1. Likewise, the Legislature may control the jurisdiction of corpo-

ration courts. Obviously, the Legislature has substantial authority over the organization of the judicial department and over the jurisdiction of the courts, and "[a] legislative enactment which does not frustrate or interfere with the adjudicative function of the courts does not constitute an impermissible encroachment upon the judicial branch of government." *Underwood v. State, supra*, at 47. Many cases have recognized "that it is well within the power of the Legislature to specify the reach of the jurisdiction of the corporate courts in exercising their functions." *Doyle v. Metropolitan Government of Nashville and Davidson County*, 225 Tenn. 496, 502, 471 S.W. 2d 371, 373 (1971). If the Legislature extends the jurisdiction of such a court to include enforcement of any State statutes, constitutional judicial power is vested in them under Article VI because the city court then exercises a concurrent jurisdiction with an inferior court.[7]

Nevertheless, the power to create such courts is granted, not under the provisions of Article VII, which pertains in part to local government, but under Article VI, which establishes the judicial power of this State. Although cases have held that a corporation court is not a constitutionally mandated court, *e.g., State ex rel. Johnson v. Davis*, 204 Tenn. 510, 513, 322 S.W.2d 214, 215 (1959), the necessary implication of its inclusion in Article VI, § 1, is that a city court can be given sufficient jurisdiction to constitute an inferior court within the meaning of Article VI. Judicial power is expressly vested in the judges of the courts and the Legislature's authority to vest jurisdiction in corporate courts does not give it the authority to control, directly or indirectly, the judge's exercise of judicial power once granted.

"While it is conceded that jurisdiction is an essential element for the action of a court, yet it is equally a court, whether that jurisdiction be over many or few questions as subjects of judicial action. The extent or narrowness of the jurisdiction exercised does not at all go to the idea of its existence intact, but only its efficiency to perform a larger or smaller function as an agency of government." *Jackson, Morris & Co. v. Nimmo & Thornhill*, 71 Tenn. 597, 608 (1879).[8] Whether the Legislature has vested much or little jurisdiction in an inferior court does not change the nature of the court as a part of the judicial department of the government. Regardless of the Legislature's power to ordain and establish inferior and corporation courts, once created, all Article VI "courts derive their basic authority from the constitution which, by necessity, grants all powers necessary to engage in the complete performance of the judicial function" within the confines of their jurisdiction. *Anderson County Quarterly Court v. Judges of the 28th Judicial Circuit*, 579 S.W.2d 875, 877 (Tenn.App.1978). In the sense that a corporation court is not specifically mandated by the Constitution, such courts are not constitutional courts, but when a corporation court is established, it may be vested with judicial power—and that power is itself derived directly from the Constitution and not from any act of the Legislature. *Cf. State ex rel. Boone v. Torrence*, 63 Tenn.App. 224, 241–242, 470 S.W.2d 356, 364. To that extent, at least, "a municipal court is a part of the judicial system of the state...." *Gregory v. City of Memphis*, 157 Tenn. 68, 70, 6 S.W.2d 332, 332 (1928). *But see State ex rel. Haywood v. Superintendent, Davidson County Workhouse*, 195 Tenn. 265, 270–271, 259 S.W.2d 159, 161 (1953) (Extent of jurisdiction granted to a corporation court affects its character as

---

**7.** The jurisdiction of the Soddy-Daisy municipal court is addressed in the majority opinion. The exercise of concurrent jurisdiction in *some* cases with a General Sessions Court, an inferior court within the meaning of Article VI, involves the exercise of substantial judicial power to determine the appropriate sentence for certain offenders up to 11 months 29 days of incarceration—a substantial deprivation of liberty. The extent of power, not the agency itself, is part of what gives a tribunal its judicial character as a court. The exercise of this power is protected by Article II, § 1, and Article VI, § 1.

**8.** To paraphrase Gertrude Stein, a court is a court is a court.

part of judicial department).[9]

I cannot concede that because a municipal court may exercise limited judicial powers, it is somehow divested of its essential character as a court. If "[a] municipality is a government within itself, and must have the power to punish for offenses against its laws, and must be able to bring that punishment to bear and to make it effective by its own agencies, that is, through its own courts and officers," *O'Haver v. Montgomery,* 120 Tenn. at 460, 111 S.W. at 451, then the citizens of a municipality may no more be deprived of due process to any greater or lesser extent simply because the limited jurisdiction of the tribunal before which they stand—a *de minimis* violation of constitutional rights would be opening the door to greater deprivations if transitory but nevertheless compelling circumstances caused the exception to swallow the rule. Numerous constitutional provisions would be vitiated by such an exceptional treatment of municipal courts that exercise judicial powers otherwise protected by Article II, § 1, and Article VI, § 1. *See, e.g.,* Article I, §§ 2, 8, 9, 15, 16, 17. The liberty and property of citizens brought before any court created under Art. VI, § 1, are equally protected by the independence of the judiciary, whether the court has broad or narrow jurisdiction. The protection of constitutional rights does not depend on the type of court before which a person may be brought.[10]

At least in the exercise of its concurrent jurisdiction with an inferior court, the relation between a municipal court and a municipality is hardly distinguishable from that between state or county government and the circuit and chancery courts. I recognize that

"[m]unicipalities enjoy considerable autonomy under the sovereignty of the State. They are instrumentalities of the State government, whose function and duty it is to relieve the latter of the cares entailed in administering the affairs of relatively large aggregations of population within small areas ... enabling [the general government] to decentralize as much as may be safe and convenient the powers of government...."

*O'Haver v. Montgomery, supra,* 120 Tenn. at 463, 111 S.W. at 452. *See also Trigally v. Mayor and Aldermen of Memphis, supra,* at 388–390. Regardless, the only powers delegable are derived from those granted to the general government under the Constitution, *e.g., State ex rel. Board of Dental Examiners v. Allen,* 192 Tenn. 396, 398–399, 241 S.W.2d 505, 506 (1951), and while "it is a question for the Legislature to determine what portion of governmental powers shall be conferred upon its municipalities," *Ballentine v. Mayor and Aldermen of Pulaski, supra,* 83 Tenn. at 645, "the ordinances and modes of administration of municipal corporations ... [may not] be repugnant to any provisions of the Constitution...." *Trigally v. Mayor and Aldermen of Memphis, supra,* at 390. The flexibility of legislation available to the General Assembly concerning the creation, organization, and powers of a municipal government, " 'making it a miniature state within its locality,' " *State v. Wilson, supra,* 80 Tenn. at 257, is not unlimited by the restraints of the Constitution. *Id.,* at 254. Articles II, § 1, and VI, § 1, constrain the Legislature's authority over the delegation and distribution of governmental powers to municipalities.

## II.

In the context of the constitutional policy guaranteeing and establishing an independent judiciary, the issue of whether a municipal judge may be terminated at will must be decided. Several cases have been decided that tend to support the Respondents' position on the statutes in question in this case, but none of these cases has

---

**9.** See footnote 7, *supra.* The distinction drawn by this case remains valid and is relied upon in the majority opinion as its *ratio decidendi.*

**10.** The limited jurisdiction over criminal offenses permitted by T.C.A. § 6-21-501(b) is clearly the exercise of judicial power. Many constitutional provisions control the treatment of accused persons and the forum in which criminal liability is determined cannot alter these fundamental rights to due process.

presented the issue in the context of an attempt by a local governing body to direct the conduct of a municipal court in the exercise of its judicial functions. In analyzing this issue, not only must the Constitution be construed *in pari materia, e.g. Davis v. Williams*, 158 Tenn. 34, 47, 12 S.W.2d 532, 535 (1928), but whether a judge of a municipal court may be compared to an at will employee of a city, a private corporation or some other business must be determined as well.

### A.

At will employment remains viable law in Tennessee at this time and "an employee under a contract of employment at will may be terminated by his employer at any time with or without cause." *Graves v. Anchor Wire Corp. of Tennessee*, 692 S.W. 2d 420, 421 (Tenn.App.1985). "[A] contract for employment for an indefinite term is a contract at will...." *Whittaker v. Care-More, Inc.*, 621 S.W.2d 395, 396 (Tenn.App. 1981).

A number of subordinate officers of a municipality organized under T.C.A. §§ 6–18–101, *et seq.*, can "be appointed by the city manager and removed by him at any time." T.C.A. § 6–21–102(c). The city manager is appointed by the board of commissioners but may only be removed at will after a minimum term of twelve months, during which a city manager may be removed only for cause. T.C.A. § 6–21–101. Nevertheless, T.C.A. § 6–20–220 provides that the mayor, any commissioner, or any employee may be removed by the board of commissioners for cause. Of the officers and employees enumerated in Chapter 21, Title 6, all but the city judge are essentially administrative officials, and, with the exception of the city manager, none has a definite term of office,[11] but T.C.A. § 6–20–220 establishes the procedures for removal for cause and T.C.A. § 6–21–106 states that any officer or employee; includ-

ing the city judge, actively involved in a commission election may be removed for cause. While I think a reading of these provisions *in pari materia* compels the conclusion that at will merely refers to the lack of a definite term of office, I cannot say that such employees of a municipality are at will employees in the same sense as an employee in the private sector. As this Court noted in *Hayden v. Memphis*, 100 Tenn. 582, 588, 47 S.W. 182, 183 (1898),

> "[w]hether acting upon express legislative warrant or in the exercise of inherent power ... the [municipal] corporation must act with some degree of conformity to the rules of the common law. There must first be notice given to the accused of the time when, and the place where, the trial body will meet, in order that he may be present in person, and with his witnesses.... Then 'there must be a charge or charges against him specifically stated with substantial certainty, yet the technical nicety required in indictments is not necessary.'"

(Citation omitted) Absent these common law prerequisites, which are essentially codified by T.C.A. § 6–20–220, no removal can be sustained. *Id.*, 100 Tenn. at 589, 47 S.W. at 183–184. *See also Hawkins v. Kercheval*, 78 Tenn. 535, 543 (1882). While the city manager alone may be removed at will after a definite term of twelve months, as explicitly authorized by statute, the other employees could theoretically retain their employment more or less indefinitely absent cause for removal pursuant to T.C. A. § 6–20–220.[12]

Nevertheless, this conclusion does not of itself answer the issue presented by this case because a city judge, to the extent that such a judge is the agent of the judicial power vested in a city under Article VI, § 1, does not share the characteristics of administrative employees and performs a function whose authority is derived from the Constitution itself. Moreover, no provi-

---

11. Elected municipal officials have statutorily set terms of office. T.C.A. §§ 6–20–101, 6–20–201.

12. Many people have made careers of public employment at the municipal level and could

not be removed at will following each election of a new board of commissioners. Such action by newly elected boards could obviously wholly disrupt city government.

sion of the Constitution authorizes a judicial term for life without periodic election.[13] A city manager, removable at will after a definite term, has a close working relationship with the board of commissioners as the chief administrative officer under T.C.A. § 6–21–108 and thus must be sufficiently compatible with the commissioners, but a city judge is a member of the judiciary and does not hold an administrative office or work as closely with the city commission, which is the legislative body of a municipality under T.C.A. § 6–20–205. As has been previously discussed in this opinion, the division of powers of the Constitution is maintained to some extent at the municipal level, although the executive and legislative branches are more closely bonded for the sake of efficiency; however, the fundamental principles served by the separation of powers are no less operative. Even if I were to concede that administrative officers and employees are removable at will, that would not resolve the issue in this case, which is not whether this Petitioner should have or should not have been removed, but whether any city judge exercising constitutional judicial power can be removable at will. The significance of the question is clear when the essential nature of the office of a judge is considered:

> " 'A judge is a public officer, lawfully appointed to decide litigated questions according to law.' 'He must not only be impartial, but he must pay a blind obedience to the law whether good or bad, he is bound to declare what the law is, and not to make it; he is not an arbitrator but an interpreter of the law....' "

*Lawyers' Tax Cases*, 55 Tenn. 565, 650 (1875) (Opinion of Turney, J.) (citation omitted). Although municipal court is created by statute and its jurisdiction conferred in the Legislature's discretion, "[t]he three branches of government are independent in exercising their assigned duties, whether they be constitutional in nature, statutory

or otherwise," *Anderson County Quarterly Court v. Judges of the 28th Judicial Circuit, supra*, at 877, and thus "to the extent that any one branch of the government becomes subservient to another, its ability to act in its role of providing a 'check and balance' is curtailed and the effective concept of government ordained by our constitution rapidly loses its viability...." *Id.*, at 878. Judicial independence is as essential for a city judge who exercises the jurisdiction of an inferior court as it is for a Justice of the Supreme Court.

### B.

Elsewhere, this Court has noted that the Constitution does not expressly set the term of office for municipal judges, *e.g.*, *State ex rel. Johnson v. Davis, supra*, 204 Tenn. at 516, 322 S.W.2d at 216, nor does it expressly require that municipal judges be elected, *e.g.*, *City of Elizabethton v. Carter County*, 204 Tenn. 452, 463, 321 S.W.2d 822, 827 (1958), but the Constitution clearly guarantees the independence of the judiciary. Article II, § 1; Article VI, § 1. *See also Moore v. Love*, 171 Tenn. 682, 686–687, 107 S.W.2d 982, 983 (1937). In *Moore v. Love, supra*, the Court reiterated that "the Constitution by implication excluded any power in the Legislature to remove a judge for reasons other than such reasons as may be personal to the judge's conduct of the office." 171 Tenn. at 687, 107 S.W. 2d at 983. The authority of the Legislature over jurisdiction does not translate into a license to remove judges at will. Depending on the jurisdiction conferred, Article VI, § 1, recognizes that a municipal court still exercises judicial power over the individuals whose cases are adjudicated in it. *Deming v. Nichols, supra*, 135 Tenn, at 300–304, 186 S.W. at 114–115. *See also O'Haver v. Montgomery, supra*, 120 Tenn. at 460 and 465, 111 S.W. at 451 and 453. The power of removal of a judge from

---

**13.** Under either view, a city judge may neither be removed at will nor serve for life without the periodic approval of an election. Article VI, § 4, is explicit that the term of office for a judge of an inferior court shall be eight years and that such judges shall be elected. "When we are called upon to construe [a] clause in the Constitution ... to ascertain the intention of the framers, we are bound to give such construction as will harmonize with the several provisions which may involve the same question." *Lawyers' Tax Cases*, 55 Tenn. 565, 636 (1875). This is a function of the rule that provisions should be construed *in pari materia*.

office is not permitted to be arbitrarily invoked because

> " '[a]n attempt to remove an officer for any cause not affecting his competency or fitness, would be an excess of power and equivalent to an arbitrary removal. In the absence of any statutory specification, the sufficiency of the cause should be determined with reference to the character of the office and the qualifications necessary to fill it.' "

*The Judges' Cases*, 102 Tenn. 509, 522, 53 S.W. 134, 137 (1899) (Citation omitted). Furthermore, the cause for removal is to be made public. *Id.*, 102 Tenn. at 527, 53 S.W. at 138.[14] Otherwise,

> "if the power of removal conferred by this section is arbitrary and unlimited, a Judge might be removed on account of his religion, his politics, his race, or because he had declared unconstitutional a particular enactment.... Such a construction would be monstrous, and wholly abhorrent to fundamental ideas of justice and judicial independence. The design of the framers of the Constitution was to create three departments, executive, legislative, and judicial, which should be co-ordinate and wholly independent in the exercise of their appropriate functions."

*Id.*, 102 Tenn. at 528, 53 S.W. at 138. Considering the role of a judge, as an agent of the State's judicial power, in determining the rights of the parties before the court, the exercise of the power of removal must be constrained to protect judicial independence, which is essential to the effective operation of constitutional government. "The franchise of the state might become dangerous engines in the hands of the crafty, if judges could be moulded to meet exigencies." *Bank of the State v. Cooper, supra*, 10 Tenn. at 614–615.

In *City of Elizabethton v. Carter County, supra*, this Court found that "the terms, if any, of city judges may be fixed in accordance with the wishes of the Legislature," 204 Tenn. at 464, 321 S.W.2d at 828, because "nowhere in Art. VI, providing for

the judicial department of the State, does the Constitution provide or require that the judge of a corporation court shall be elected by the people nor does it make any provision as to the length of the term of office...." 204 Tenn. at 463–464, 321 S.W.2d at 827. The Court was not, however, faced with the issue in that case that presents itself now and that so clearly reveals the dangers of subjecting a judge who exercises the jurisdiction of an inferior court to an arbitrary power of removal. I am persuaded that to the extent that *City of Elizabethton v. Carter County* may be considered inconsistent with the implicit constitutional rule of the majority opinion, it should be partially overruled since "[i]t does not follow ... because there may be no restriction in the constitution prohibiting a particular act of the legislature, that such act is therefore constitutional." *Bank of the State v. Cooper, supra*, 10 Tenn. at 603. As Justice Freeman aptly noted in his dissenting opinion in *State ex rel. Coleman v. Campbell, supra*, 3 Shan.Tenn.Cas. at 387:

> "Would not this holding be necessarily based on the idea that one clause of the constitution, or an inference drawn from it, shall be held and construed not only to conflict with another plain and definite provision, but shall overturn it and render it negatory? The power to ordain and establish courts, be held and construed to authorize a removal from office, in a mode different from, and directly in contradiction of the mode pointed out in the unequivocal clauses expressly providing how such acts may and shall be done."

Article VI, § 6, and Article V, §§ 4 and 5, expressly control removal of judges and certain other civil officers, and Article VI, § 4, requires that judges of the inferior courts be elected. These provisions must be read *in pari materia*.

### C.

I no longer read the language of Article VI, § 1, which apparently creates a distinc-

---

**14.** If a city court exercises constitutional judicial power, the refusal of a board of commissioners to state a reason for removal would, therefore, be improper.

tion between municipal courts and other inferior courts, as necessarily excluding municipal courts from the protections and requirements under these other provisions of the Constitution. First, I think that the framers merely intended not to distinguish but to include municipal courts within the judicial power established and preserved by Article VI, § 1, and thus, depending on its jurisdiction, a municipal court may constitute an inferior court within the meaning of the Tennessee Constitution as a repository of the judicial power. Second, if the provision of Article VI, § 1, is ambiguous as a result of this distinction, "[t]his Court is bound by the rule constitutional provisions should be given a broad and flexible interpretation where ambiguities exist." *Southern Railway Co. v. Fowler*, 497 S.W. 2d 891, 896 (1973) (citation omitted). "The provisions of the constitution are to be given effect according to their intent, as gathered from the entire instrument." *Davis v. Williams, supra*, 158 Tenn. at 47, 12 S.W.2d at 535. Once the Legislature acts to ordain and establish a court under Article VI, § 1, "the constitution prescribes the manner of appointing the judges." *Bank of the State v. Cooper, supra*, 10 Tenn. at 616 (Opinion of Kennedy, J.). Moreover, as the Court recognized in *State v. Link*, 172 Tenn. 258, 261, 111 S.W.2d 1024, 1025 (1938), "[t]erms of all judges, including judges of inferior courts, are fixed by the Constitution, article 6, section 4, at eight years, and their tenure cannot be impaired except where the Legislature may find it necessary to redistribute the business of the courts for purposes of economy and efficiency." All inferior courts, including municipal courts exercising concurrent jurisdiction with an inferior court, are authorized directly by the Constitution, despite the fact that only three courts are specifically established by mandate:

"[W]e see no difference whether the power of the circuit and chancery courts is vested in them directly by the constitution, or indirectly through the action of the legislature. In either view, they are constitutional courts, that is, courts ordained and established by constitutional authority. Exactly the same is true as to all other inferior courts ordained and established by the legislature. They are so ordained and established by the authority of the constitution and are therefore constitutional courts."

*State ex rel. Coleman v. Campbell, supra*, 3 Shan.Tenn.Cas. at 362.

I do not believe that any apt comparison can be made between a judge presiding in any court of Tennessee and an at will employee of a private business. A judge is an officer of this State authorized by the Constitution to exercise the judicial power vested under Articles II, § 1, and VI, § 1, in the courts of this State. This power is itself independent of the control of the Legislature over the jurisdiction of the courts. The purpose of this independence is no less compelling in the setting of a municipal court than in any other court of this State. The facts of this case amply demonstrate the danger of subjecting any judge to the political whims of the other departments of government. The precedent controlling at will employment is inapposite. As Justice Peck wisely remarked in his separate opinion in *Bank of the State v. Cooper, supra*,

"I can never follow precedent, in the line of analogy, when it leads to an infraction of the constitution. Hence the necessity of a frequent recurrence to first principles. If we follow precedent, and move on according to the analogy of cases, we shall be led from step to step until the constitution itself will be lost amidst the subtleties of the law. When precedent is established in the construction of statute or common law, I concede the propriety of following it, unless flatly absurd or unjust. But ... no precedent, however grave, and no adjudication, however respectable, can warrant a violation of that sacred instrument."

10 Tenn. at 622.

In my opinion, when a municipal court is vested with concurrent jurisdiction with an inferior court, the at will provisions of these statutes are unconstitutional and the presumption of constitutionality afforded statutes, *e.g. State ex rel. Maner v. Leech*, 588 S.W.2d 534, 540 (Tenn.1979), has been

rebutted in this case. I am no less aware that precedent would be partially overruled, but "[t]he fact ... that an Act has been construed and enforced and passed upon by this Court is not conclusive of its validity and constitutionality, and this question may be raised at any time when the facts and pleadings justify its consideration." *Gribble v. Wilson*, 101 Tenn. 612, 616–617, 49 S.W. 736, 737 (1899). Furthermore, "any [other] rule ... would lead to entanglements and abuses against which the public should be protected as a matter of public policy." *Driver v. Thompson*, 49 Tenn.App. 646, 652, 358 S.W.2d 477, 479 (1962). As was stated in *Arnold v. Mayor and Aldermen of the City of Knoxville*, 115 Tenn. 195, 202, 90 S.W. 469, 470 (1905):

> "This court recognizes to its fullest extent the necessity for stability, consistency, and a firm adherence to the doctrine of stare decisis in passing upon and construing any provision of the organic law; but if an error has been committed, and becomes plain and palpable, the court will not decline to correct it, even though it may have been reasserted and acquiesced in for a long period of years."[15]

A long and unchallenged custom cannot constitutionalize a practice that is eventually shown to be repugnant to the fundamental law. Finally, I am also cognizant that many municipalities could be affected by such a holding, but as Justice Freeman noted in his separate opinion in *Lynn v. Polk, supra*, 76 Tenn. at 144, "[c]onsideration of consequences is not for us—only duty is to be known, and faithfully done." If the Constitution is to remain viable and its integrity maintained, this Court has no alternative but to enforce it regardless of any lesser policy considerations because "the intent and meaning of the Constitution, when arrived at in accordance with the established principles of construction, is the Supreme law of the land...." *Pope v. Phifer*, 50 Tenn. 682, 686 (1870), *overruled on other grounds* 126 Tenn. 106, 148 S.W. 229 (1912). "No argument from policy, or inconvenience, or the harmony of the system can be permitted to have any weight in

the decision of [a constitutional] question." *Sheppard v. Johnson*, 21 Tenn. 285, 296 (1841). *See also State ex rel. Coleman v. Campbell, supra*, at 387 (Freeman, J., dissenting).

### III.

While the majority opinion declines to make explicit the constitutional rule clearly implied by the holding in this case, I have fully addressed the constitutional issues and would hold that, when a corporation court is vested with any concurrent jurisdiction with an inferior court, the at will tenure provisions of T.C.A. §§ 6–21–501(b) and 16–18–102(3), as presently drafted, are unconstitutional encroachments upon the independence of the judiciary in violation of Article II, § 1, and Article VI, § 1, of the Tennessee Constitution. Nevertheless, I concur with the majority that a municipal judge appointed under T.C.A. § 6–21–501(a), who is not vested with any constitutional judicial power within the meaning of Article VI because that court does not exercise concurrent jurisdiction with an inferior court, may be terminated at will. Accordingly, I would hold that city judges properly exercising any concurrent jurisdiction with an inferior court must be elected for a term of eight (8) years as required by Article VI, § 4, and may not be removed except pursuant to the Constitution of Tennessee.

I am authorized to state that Justice O'BRIEN concurs in this concurring opinion.

---

**15.** "If the law was manifestly misunderstood or misapplied in the case decided, its primacy as a precedent may be overthrown." *The Judges' Cases, supra*, 102 Tenn. at 542, 53 S.W. at 142.